20-56174

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**Matthew Jones, *et al.*,**

Plaintiffs,

**v.**

**Xavier Becerra, in his official capacity as Attorney General of the State of California, *et al.*,**

Defendants.

On Appeal from the United States District Court
for the Southern District of California

No. 3:19-cv-01226-L-AHG
The Honorable M. James Lorenz, Judge

## APPELLEES' ANSWERING BRIEF
## (PRELIMINARY INJUNCTION APPEAL –
## NINTH CIRCUIT RULE 3-3)

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney
General

JENNIFER E. ROSENBERG
Deputy Attorney General
State Bar No. 275496
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 269-6617
 Fax: (916) 731-2124
 Email: Jennifer.Rosenberg@doj.ca.gov
 *Attorneys for Defendants-Appellees*
 *Xavier Becerra, in his official capacity*
 *as Attorney General of the State of*
 *California, and Luis Lopez, in his*
 *official capacity as Director of the*
 *Department of Justice Bureau of*
 *Firearms*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................1

JURISDICTIONAL STATEMENT .............................................3

ISSUES PRESENTED..................................................................4

CIRCUIT RULE 28-2.7 STATEMENT ........................................5

STATEMENT OF THE CASE ......................................................6

    I.      Challenged Laws ............................................................6

          A.    SB 1100 and SB 61 Imposed Modest Restrictions on FFL Sales and Transfers of Long Guns to Young Adults Aged 18-20 ...............................6

          B.    Section 27510, as Amended, Preserves for Young Adults the Rights to Possess, Use, and Acquire Handguns and Long Guns, Including Semi-Automatic Centerfire Rifles ...........................................8

    II.     Relevant Background...................................................12

          A.    Procedural History ......................................12

          B.    District Court's Order Denying Preliminary Injunction......................................................13

SUMMARY OF THE ARGUMENT .........................................15

STANDARD OF REVIEW .......................................................17

ARGUMENT............................................................................19

    I.      The District Court Did Not Abuse Its Discretion in Concluding that Plaintiffs Were Unlikely to Succeed on the Merits................................................20

          A.    Section 27510's Age-Based Restrictions on FFL Sales and Transfers Are Consistent with Historical Prohibitions and Are Presumptively Lawful Regulations That Do Not Implicate the Second Amendment ................................................21

# TABLE OF CONTENTS
## (continued)

Page

1. The District Court Did Not Abuse Its Discretion In Joining Every Other Federal Court to Consider the Issue ...............................22

2. Founding Era Regulations on Age of Militia Service Do Not Overcome Longstanding Regulation of the Age of Majority ....................27

B. Even Assuming Second Amendment Rights Are Implicated, Section 27510's Restrictions on FFLs Are Constitutional.......................................29

1. Section 27510 is Subject to At *Most* Intermediate Scrutiny.......................................30

2. Section 27510's Age-Based Restrictions on FFL Sales and Transfers Satisfy Intermediate Scrutiny.......................................33

    a. Proper Scope of Intermediate Scrutiny Inquiry ....................................................33

    b. Section 27510's Age-Based Restrictions on FFL Sales and Transfers Serve California's Substantial Interests in Public Safety, Gun Violence Prevention, and Crime Prevention................................................36

    c. There is Substantial Evidence that Young Adults Are Disproportionately Disposed to Harm Themselves or Others, Including Because of Their Incomplete Brain Development...............37

ii

**TABLE OF CONTENTS**
**(continued)**

Page

d.   Requiring Young Adults Without Military or Law Enforcement Training to Purchase Long Guns Via the Hunting License Exemption Is a Modest Requirement that Reasonably Fits California's Public Safety Goal. ........43

e.   Limiting Sales and Transfers of Long Guns Through FFLs Appropriately Serves the Legislature's Desire to Limit Gun Violence Occasioned by Mass Shootings. .......................................48

f.   SB 61's Further Limitations on Access to Semi-Automatic Centerfire Rifles Are Justified. .................................50

II.   The District Court Did Not Abuse Its Discretion in Finding That the Remaining *Winter* Factors Warranted Denial of a Preliminary Injunction .........................................54

A.   Plaintiffs Failed to Show They Will Suffer Any Irreparable Harm. ........................................................54

B.   The Balance of Equities and Public Interest Tip Overwhelmingly in Defendants' Favor. .......................59

III.   The Individual Plaintiffs' Claims Are Moot Because They Are Now 21 ..................................................................61

CONCLUSION ........................................................................64

STATEMENT OF RELATED CASES ....................................................66

CERTIFICATE OF COMPLIANCE..........................................................67

iii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alliance for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011)........................................................19, 20

*Arizonans for Official English v. Arizona*
520 U.S. 43 (1997)........................................................3, 61, 64

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen.
New Jersey*
910 F.3d 106 (3d Cir. 2018)....................................................18

*Bain v. Cal. Teachers Ass'n*
891 F.3d 1206 (9th Cir. 2018)....................................................64

*Bauer v. Becerra*
858 F.3d 1216 (9th Cir. 2017)....................................................29, 30, 36

*Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*
958 F.2d 941 (9th Cir. 1992)....................................................47

*Cole v. Oroville Union High Sch. Dist.*
228 F.3d 1092 (9th Cir. 2000)....................................................63

*DeFunis v. Odegaard*
416 U.S. 312 (1974) (per curiam) ....................................................62, 64

*District of Columbia v. Heller*
554 U.S. 570 (2008)....................................................*passim*

*Doe v. Madison Sch. Dist. No. 321*
177 F.3d 789 (9th Cir. 1999)....................................................61, 63

*Edge v. City of Everett*
929 F.3d 657 (9th Cir. 2019)....................................................54

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015)....................................................... 17, 18, 35

*Goldie's Bookstore v. Superior Ct.*
    739 F.2d 466 (9th Cir. 1984).................................................................56

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms &*
    *Explosives*
    417 F.Supp.3d 747 (2019)...............................................................*passim*

*Hohe v. Casey*
    868 F.2d 69 (3d Cir. 1989).....................................................................56

*Horsley v. Trame*
    808 F.3d 1126 (2015)............................................................................41

*Jackson v. City & County of San Francisco*
    746 F.3d 953 (9th Cir. 2014)................................................ 20, 21, 31, 34

*Johnson v. Couturier*
    572 F.3d 1067 (9th Cir. 2009).............................................................17

*Lockhart v. McCree*
    476 U.S. 162 (1986)..............................................................................18

*Lowry v. Barnhart*
    329 F.3d 1019 (9th Cir. 2003)....................................................4, 39, 40

*Lydo Enters. v. Las Vegas*
    745 F.2d 1211 (9th Cir. 1984).............................................................58

*Mai v. United States*
    952 F.3d 1106 (9th Cir. 2020).............................................................34

*McDonald v. Chicago*
    561 U.S. 742 (2010).......................................................................20, 43

# TABLE OF AUTHORITIES
## (continued)

Page

*Miller for & on Behalf of N.L.R.B. v. Cal. Pac. Med. Ctr.*
   991 F.2d 536 (9th Cir. 1993)....................................................58

*Mitchell v. Atkins*
   -- F. Supp. 3d -- (W.D. Wash. Aug. 2020) .................................25, 32, 36

*Murphy v. Hunt*
   455 U.S. 478 (1982)....................................................64

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*
   *Firearms, & Explosives*
   700 F.3d 185 (5th Cir. 2012)..........................................*passim*

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*
   719 F.3d 338 (5th Cir. 2013)..........................................22, 61, 64

*Nken v. Holder*
   556 U.S. 418 (2009)....................................................59, 60

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
   762 F.2d 1374 (9th Cir. 1985)..........................................58

*Pena v. Lindley*
   898 F.3d 969 (9th Cir. 2018)..........................................*passim*

*Powell v. Tompkins*
   926 F. Supp. 2d 367 (D. Mass. 2013)..................................24, 25, 31

*Rupp v. Becerra*
   No. 8:17-CV-00746-JLS-JDE, 2018 WL 2138452 (C.D. Cal.
   May 9, 2018) ........................................................36

*Silvester v. Harri*s
   843 F.3d 816 (9th Cir. 2016)..........................................30, 33, 45, 54

*Teixeira v. County of Alameda*
   873 F.3d 670 (9th Cir. 2017) (en banc) ..............................20, 21

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Tonry v. Sec. Experts, Inc.*
  20 F.3d 967 (9th Cir. 1994).....................................................39

*Tracy Rifle & Pistol LLC v. Harris*
  118 F. Supp. 3d 1182 (E.D. Cal. 2015) ..................................60

*United States v. Chovan*
  735 F.3d 1127 (9th Cir. 2013)................................................30

*United States v. Hale*
  261 F. Supp. 3d 1169 (N.D. Ala. 2017)..................................28

*United States v. Hinkson*
  585 F.3d 1247 (9th Cir. 2009).........................................18, 60

*United States v. Juvenile Male*
  564 U.S. 932 (2011)................................................................63

*United States v. Masciandaro*
  638 F.3d 458 (4th Cir. 2011)..................................................61

*United States v. Salerno*
  481 U.S. 739 (1987)................................................................47

*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 (2008)................................................................47

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008)............................................................19, 59

*Worman v. Healey*
  922 F.3d 26 (1st Cir. 2019) .........................................49, 50, 51

STATUTES

28 U.S.C. § 1292(a)(1)....................................................................3

28 U.S.C. § 1331..............................................................................3

# TABLE OF AUTHORITIES
## (continued)

**Page**

28 U.S.C. § 1343...................................................................3

Ala. Code § 26-1-1..............................................................29

Cal. Penal Code § 16720.....................................................10

Cal. Penal Code § 16960(g) ................................................10

Cal. Penal Code § 16960(h) ................................................10

Cal. Penal Code § 26545.....................................................12

Cal. Penal Code § 27505............................................9, 10, 11

Cal. Penal Code § 27510..............................................*passim*

Cal. Penal Code § 27510(a) ..................................................8

Cal. Penal Code § 27510(b)(1)..............................................1

Cal. Penal Code § 27510(b)(2)..............................................1

Cal. Penal Code § 27545........................................................9

Cal. Penal Code § 27585......................................................10

Cal. Penal Code § 27590(b) ..................................................8

Cal. Penal Code § 27880......................................................11

Cal. Penal Code § 27881......................................................11

Cal. Penal Code § 27885......................................................11

Cal. Penal Code § 27910.................................................12, 55

Cal. Penal Code § 27945......................................................11

Cal. Penal Code § 27950......................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Penal Code § 29610...............................................................9

Cal. Penal Code § 31615.............................................................44

Cal. Penal Code § 31700(c) ........................................................44

Neb. Rev. Stat. § 25-307.............................................................28

Neb. Rev. Stat. § 42-105.............................................................28

Neb. Rev. Stat. § 43-2101...........................................................28

Neb. Rev. Stat. § 69-2403...........................................................28

Neb. Rev. Stat. § 69-2404...........................................................28

CONSTITUTIONAL PROVISIONS

U.S. Const. Amendment XIV, § 2................................................29

U.S. Const. Amendment XXVI, § 1 ............................................29

OTHER AUTHORITIES

Infant, Black's Law Dictionary 847 (11th ed. 2019) ...................24

Larry D. Barnett, *The Roots of Law*, 15 Am. U.J. Gender Soc.
  Pol'y & L. 613 (2007)...........................................................25

Senate Bill 61 (2018-2019 Reg. Sess.)..........................................7

Senate Bill 1100 (2017-2018 Reg. Sess.) ......................................6

**INTRODUCTION**

In enacting Senate Bill 1100, and later Senate Bill 61, the Legislature sought to serve important public safety goals. As the District Court recognized, these reasonable public safety laws should not be enjoined while this lawsuit proceeds. California Penal Code § 27510, as amended by SB 1100 and SB 61, promotes safety and responsible firearm ownership and use by restricting firearm transfers by licensed firearms dealers to young adults aged 18-20 ("Young Adults"). The law imposes only modest restrictions that closely fit with the Legislature's public safety objectives; it is not an outright ban as Plaintiffs contend. In the sound exercise of its discretion, the District Court determined that Plaintiffs had not shown either a likelihood of success on the merits or irreparable harm justifying the issuance of a preliminary injunction. That judicial exercise of discretion—which preserves the statutory status quo pending a full trial—should be upheld.

SB 1100 permits the sale, rental, delivery, or transfer of long guns to those with valid, unexpired hunting licenses (with prerequisite training), Young Adults currently serving in law enforcement or the armed forces, and Young Adults who have been honorably discharged from the armed forces or reserves. Cal. Penal Code § 27510(b)(1) & (2). Those Young Adults who wish to purchase long guns but do not currently or have not previously

1

served in law enforcement, the armed forces, or the reserves thus may become eligible to purchase long guns by simply taking a hunter education course and paying a modest fee for a hunting license.

The narrow additional limitation related to semi-automatic centerfire rifles imposed by SB 61 is a common sense measure that ensures that only those Young Adults with adequate training are able to purchase semi-automatic centerfire rifles capable of inflicting serious injury from federally licensed firearms dealers. And neither SB 1100 nor SB 61 foreclosed firearms transfers to Young Adults through immediate family, spouses, intestate succession, or certain other avenues.

Plaintiffs have not shown that they are likely to succeed on the merits of their claims, as every court to have considered similar restrictions on commercial transactions through federally licensed dealers has upheld them under intermediate scrutiny. Nor did Plaintiffs meet their burden to establish the other preliminary injunction factors. Their claimed irreparable harm relies solely on their arguments on the merits, and fails for the same reasons. The balance of the equities and public interest—the latter barely addressed in Plaintiffs' brief—both weigh against enjoining enforcement of laws that promote firearm safety education and limited access to dangerous semi-automatic centerfire rifles for those in an age group the social science shows

2

is disproportionately disposed to violence and irresponsible, impulsive, or reckless behavior.

This Court should therefore affirm the District Court's order and maintain the status quo pending a full trial on the merits.

## JURISDICTIONAL STATEMENT

Defendants agree that the District Court had subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1343, and that this Court has jurisdiction to review the denial of Plaintiffs' preliminary injunction motion under 28 U.S.C. §1292(a)(1).

However, Defendants advise this Court that it no longer has jurisdiction to provide relief or render a decision as to individual plaintiffs Matthew Jones, Thomas Furrh, or Kyle Yamamoto, as they have each reached the age of 21 and their claims are now moot. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 23 (1997) ("It is the duty of counsel to bring to the federal [appellate] tribunal's attention, 'without delay,' facts that may raise a question of mootness."). Although the AOB notes that the individual plaintiffs were under 21 "at the time the preliminary injunction was filed," AOB at 9, all three individual plaintiffs turned 21 prior to the filing of the notice of appeal in this action, and indeed prior to the trial court's issuance of the order under review here on November 3,

3

2020.[1]  Consideration of these new developments is "mandatory" because they "render [the] controversy moot and thus divest [the Court] of jurisdiction" as to the individual plaintiffs.  *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003).  Defendants address this issue more fully in section Argument § III below.

## ISSUES PRESENTED

1.     Whether the District Court's conclusion that Plaintiffs were unlikely to establish a likelihood of success on their Second Amendment claim was within its discretion, where the court's decisions at each step of the traditional Second Amendment analysis invoked the proper legal standards and comported with the decisions of every federal court analyzing similar age-based restrictions on firearms sale, acquisition, or possession for Young Adults aged 18-20.

---

[1] As to Plaintiffs Jones and Furrh, this is clear from their declarations filed in the district court. *Cf.* 3-ER-0350-52 and 3-ER-0353-56 (signed declarations of individual plaintiffs Jones and Furrh stating that they were 20 years old in September 2019).  As to Plaintiff Yamamoto, the appellate record by itself is ambiguous, but Defendants, based on representations from Plaintiffs, understand that there is no dispute that he has "aged out" with the other individual Plaintiffs.  Should Plaintiffs dispute these facts or should the Court require further evidence on this matter, Defendants offer to supplement the record with admissions and documents procured through discovery.

2. Whether the District Court's conclusions that Plaintiffs failed to show irreparable harm in the absence of a preliminary injunction, and that the balance of the equities and public interest tipped in Defendants' favor, were within its discretion, where Plaintiffs could still possess, use, and acquire firearms notwithstanding California Penal Code § 27510's restrictions, Plaintiffs waited several months to seek injunctive relief, and the public interest in avoiding firearm violence must be examined against Plaintiffs' interest in purchasing any firearm of their choice.

3. Whether the claims of individual plaintiffs Jones, Furrh, and Yamamoto to a preliminary injunction are moot because each attained the age of 21 prior to the filing of the notice of appeal in this action.

## CIRCUIT RULE 28-2.7 STATEMENT

The addendum filed with this brief contains pertinent constitutional provisions, treaties, statutes, ordinances, regulations, or rules not included in Plaintiffs' brief or addendum.

## STATEMENT OF THE CASE

### I. CHALLENGED LAWS

#### A. SB 1100 and SB 61 Imposed Modest Restrictions on FFL Sales and Transfers of Long Guns to Young Adults Aged 18-20

On September 28, 2018, then-Governor Edmund G. Brown Jr. signed into law Senate Bill 1100 ("SB 1100," 2017-2018 Reg. Sess.), bringing parity to the age limitations placed on the sale or transfer of both handguns and long guns to those under the age of 21. As relevant here, SB 1100 amended California Penal Code Section 27510 to add age-based restrictions for the sale or transfer of long guns by a federally licensed firearms dealer ("FFL") in California. More specifically, SB 1100 amended Section 27510 to prohibit FFLs from selling or otherwise transferring any firearm to any person under the age of 21, but permitted otherwise lawful transfers to Young Adults in certain circumstances described below. SB 1100's amendments to Section 27510 became effective January 1, 2019.

SB 1100's amendments raising the age to purchase long guns from 18 to 21 left open several exceptions. It did not apply to several categories of persons older than 18 years of age who are subject to firearm safety education and training, including: a person who "possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife";

an active peace officer authorized to carry a firearm; "[a]n active federal officer or law enforcement agent"; "[a] reserve peace officer"; an active member of "the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States"; or "an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States." 2-ER-0048-49 (quoting prior version of Section 27510 effective January 1, 2019).

In 2019, following a deadly shooting in which a 19-year-old opened fire with a semi-automatic centerfire rifle in a synagogue in a suburb of San Diego, California, the California legislature proposed through Senate Bill 61 ("SB 61", 2018-2019 Reg. Sess.) closing the "loophole" in Section 27510 that permitted Young Adults to purchase semi-automatic centerfire rifles under the hunting license exemption. *See*, *e.g.*, 5-ER-0801. Under SB 61's amendments to Section 27510, which became effective January 1, 2020, an FFL may no longer transfer semi-automatic centerfire rifles to a person under the age of 21, except as enumerated. While exemptions from this transfer restriction regarding semi-automatic centerfire rifles are available for law enforcement officers and active and reserve members of the Armed Forces, under SB 61, neither the hunting license exemption nor the

7

exemption for retired members of the Armed Forces in Section 27510 now extends to transfers of semi-automatic centerfire rifles  Accordingly, under the current version of Section 27510, Young Adults who have a valid, unexpired hunting license or who are honorably discharged member of the armed forces or active reserves may purchase any firearm that is not a handgun or a semi-automatic centerfire rifle.

Although it has certain limited effects on the available channels for acquiring firearms, Section 27510, as amended by SB 1100 and SB 61, regulates and mandates penalties *only* for conduct of FFLs.  *See* Cal. Penal Code §§ 27510(a), 27590(b).  Section 27510 imposes *no* penalties on would-be purchasers or transferees, such as the individual plaintiffs here.

### B. Section 27510, as Amended, Preserves for Young Adults the Rights to Possess, Use, and Acquire Handguns and Long Guns, Including Semi-Automatic Centerfire Rifles

In addition to the express exemptions set forth in the text of Section 27510, SB 1100's and SB 61's amendments preserve several avenues for Young Adults to ***own***, ***inherit***, ***take title***, ***borrow***, ***possess***, and ***use*** both handguns and long guns (including semi-automatic centerfire rifles).

Importantly, Section 27510 does not regulate *possession* or *use*; [2] Young Adults between the ages of 18 and 20 are free to *possess* handguns and long guns, including semi-automatic centerfire rifles. So long as they follow otherwise applicable California laws (such as safe storage laws), they may *use* them for self-defense in the home or elsewhere, for hunting, for sport shooting, at ranges, and for any other lawful purposes. And nothing in Section 27510 requires Young Adults to surrender, sell, or otherwise give up otherwise lawfully-acquired handguns or long guns, including semi-automatic centerfire rifles, that they already own.

Although most sales and transfers of firearms in California must be made through a FFL (*see* Cal. Penal Code § 27545), Section 27510's amendments left untouched provisions of California law permitting Young Adults to receive firearms without having to effect any acquisition, loan, or

---

[2] Plaintiffs incorrectly state that "California law continues to strictly limit . . . possession of handguns by 18-to-20-year-olds." AOB 8 (citing Cal. Penal Code §§ 27505 & 29610). The Penal Code does not prohibit 18-20-year-olds from possessing, receiving a loan, or receiving a non-sale transfer of a handgun that does not require using a FFL as an intermediary; rather, it prohibits anyone from *selling* a handgun to anyone under 21, and it prohibits possession of handguns by *minors*. *See* Cal. Penal Code § 27505 ("No person, corporation, or firm shall sell, loan, or transfer a firearm to a minor, nor sell a handgun to an individual under 21 years of age."); Cal. Penal Code § 29610 ("A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person.").

other transfer through a FFL—thus exempting these forms of acquisition or loan from Section 27510's age limitations:

***Gifts and inheritance from immediate family members.*** Young Adults may receive transfers of handguns and long guns from an immediate family member—defined as a parent or grandparent—"by gift, bequest, intestate succession, or other means from one individual to another[.]" Cal. Penal Code § 27585; Cal. Penal Code § 16720; Cal. Penal Code § 27505 (prohibiting *sale* of handguns to those under 21 by private parties, but not other types of transfers).

***Spousal inheritance and other "operation of law" transfers.*** Young Adults may also receive a handgun or long gun, including a semi-automatic centerfire rifle, from a spouse (or otherwise) "by operation of law" through a transmutation of property or as a surviving spouse. Cal. Penal Code § 27585; Cal. Penal Code §§ 16960(g) & (h) ("operation of law" includes transfer by "transmutation of property between spouses" or where received as a "surviving spouse"); Cal. Pen Code § 27505.

***Loans.*** Among other circumstances, Young Adults not otherwise prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm also may be loaned firearms, including handguns, by parents, siblings, grandparents, spouses, and registered domestic partners for

up to 30 days, Cal. Penal Code § 27880, and they may be loaned firearms by additional categories of people for up to three days at a time if they handle and use the firearm in the presence of the person loaning the firearm, Cal. Penal Code § 27885. Furthermore, Young Adults may be loaned firearms, including handguns, if the loan occurs at the lender's place of residence or other real property, so long as the handgun remains on the premises of the real property for the duration of the loan. Cal. Penal Code § 27881; *see also* Cal. Pen Code § 27505. And Young Adults who are licensed hunters may be loaned firearms, other than a handgun, for the *entirety* of a hunting season. Cal. Penal Code § 27950.[3]

*Target shooting and practice at ranges and gun clubs.* Young Adults also may be loaned firearms

> for the purposes of shooting at targets if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

---

[3] Although they do not apply to Young Adults, several provisions also permit the loan of firearms, including handguns, to minors with the consent or supervision of the minor's parent or legal guardian for certain purposes. *E.g.*, Cal. Penal Code §§ 27505, 27945.

Cal. Penal Code § 27910; Cal. Penal Code § 26545 (no federal or state dealer license is required to loan firearms for target shooting). Thus, even Young Adults without valid hunting licenses and those who do not own or otherwise possess their own firearms have lawful opportunities to practice shooting with loaned firearms, even if the loan is not made by a parent, spouse, sibling, grandparent, or registered domestic partner, so long as the loan is not made by a FFL subject to the limitations of Section 27510.

## II. RELEVANT BACKGROUND

### A. Procedural History

Plaintiffs are three individual plaintiffs, three gun store and range plaintiffs, and four institutional plaintiffs. They filed their initial complaint challenging SB 1100's amendments to Section 27510 on July 1, 2019, 14-ER-2879, but never served the initial complaint or any summons thereon. SER084. Instead, Plaintiffs filed a First Amended Complaint for Declaratory and Injunctive Relief a full month later on July 30, 2019, and served that pleading and summons on August 1, 2019. *Id.*; *see also* 14-ER-2916. Plaintiffs waited until October 4, 2019 to file their first preliminary injunction motion—more than *nine months* after SB 1100 took effect, and more than a year after SB 1100 was signed into law. 14-ER-2917.

Following Governor Newsom's signing of SB 61, Plaintiffs withdrew their initial motion for preliminary injunction regarding SB 1100's amendments to Section 27510 on October 18, 2019 in light of their desire to file an amended complaint addressing SB 61's further amendments. 14-ER-2918. Plaintiffs filed their Second Amended Complaint (SAC) three weeks later, on November 8, 2019, 14-ER-2839, and did not file the motion for preliminary injunction that is the subject of this appeal until November 12, 2019, 3-ER-0347.

Primary briefing on the preliminary injunction was completed in February 2020 and the parties provided the District Court with notices of new case authority in July, August, and September 2020. 14-ER-2921-22.

### B. District Court's Order Denying Preliminary Injunction

On November 3, 2020, the District Court denied Plaintiffs' motion for preliminary injunction, finding that Plaintiffs were not likely to succeed on the merits of their Second Amendment claims at *either* step one *or* step two of this Court's ordinary Second Amendment analysis. 1-ER-0002-20. At each turn in its analysis, the District Court examined the arguments and evidence presented by each side.

As to step one, the court followed precedent from other circuits in concluding that there is a longstanding historical tradition of regulating sales

of, and access to, firearms to those under the age of 21, and thus such regulations likely fall outside the ambit of Second Amendment protections and are presumptively constitutional. 1-ER-0006-0011.

The District Court also concluded that even if Plaintiffs could demonstrate a likelihood of success at step one, they would still fail to establish a likelihood of success at step two. 1-ER-0012-16. The court rejected Plaintiffs' invitation to apply strict scrutiny, and determined that— as in every other similar age restriction case litigated thus far—at most intermediate scrutiny would apply. 1-ER-0014. In so doing, the trial court expressly rejected Plaintiffs' characterization of Section 27510's age limitation provisions as imposing a "categorical ban" on access to firearms for young adults. 1-ER-0012-13. The court examined the various exemptions set forth in the law, as well as other legal avenues for Young Adults to acquire firearms, and stated that, "[c]ontrary to Plaintiffs' assertions, the California law in question is not a complete ban on the sale, transfer or supply by a federally licensed firearms dealer of all firearms for persons 18 to 20 years old." 1-ER-0012.

Following the lead of other courts examining similar age-related regulations and finding such regulations justified by social science and neuroscientific evidence regarding the connection between the relative

14

immaturity and impulsivity of Young Adults and violent crime, the District Court found that Plaintiffs were unlikely to succeed in arguing that the limitations imposed by Section 27510 did not reasonably fit the State's articulated goals of increasing safety and reducing crime, particularly in light of the narrow limitations imposed for purposes of limiting access to firearms, and especially more deadly firearms, to those with proper training. 1-ER-0016.

Lastly, the District Court determined that Plaintiffs' delay in seeking injunctive relief, and even more importantly, the wide availability of access to firearms through available exemptions or transactions not requiring the facilitation of a FFL, rendered Plaintiffs unable to show that they would suffer irreparable harm in the absence of a preliminary injunction. 1-ER-0018. The court also determined that the balance of harms tipped in favor of the State, stating given the law's focus on preventing gun violence, "[t]he potential harm of enjoining a duly-enacted law designed to protect public safety outweighs Young Adults' inability to secure the firearm of their choice without proper training." 1-ER-0019.

## SUMMARY OF THE ARGUMENT

The District Court correctly applied this Court's standard two-step analysis in determining that Plaintiffs have not shown a likelihood of success

15

on the merits that would support issuing a preliminary injunction against an important public safety measure.

At step one of the analysis, the District Court correctly found that California's age-related restrictions on firearms purchases do not burden Plaintiffs' Second Amendment interests. Like every other federal court to consider the question, the District Court recognized that the Second Amendment does not confer an unfettered right on Young Adults to purchase and possess handguns and other deadly firearms. The text, history and tradition surrounding the Second Amendment demonstrate that the Second Amendment was not intended to sweep so broadly.

At step two, the District Court correctly applied intermediate scrutiny, properly rejecting Plaintiffs' arguments in favor of strict scrutiny. Under intermediate scrutiny, California Penal Code § 27510 serves an important government interest—public safety—and reasonably fits those interests by restricting certain firearms purchases by Young Adults while allowing for reasonable exceptions and providing other avenues for activities such as sport and target shooting.

The remaining factors that must be considered in assessing the right to a preliminary injunction all tip sharply in favor of preserving the status quo pending trial. None of the plaintiffs—individual, dealer, or institutional—

can establish irreparable harm on the present record. On the other hand, California's important public safety goals would be impeded, with the specter of potentially tragic outcomes. At the same time, the public interest, barely considered by Plaintiffs, weighs heavily in favor of deferring to California's reasonable judgments as to how best to protect the public from gun violence, at least until the matter can be considered on the merits.

Because no abuse of discretion has been shown, the District Court's decision should be affirmed.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion for a preliminary injunction for abuse of discretion, and the underlying legal principles de novo. *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015). "This review is 'limited and deferential,' and it does not extend to the underlying merits of the case." *Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009). Instead, the Court "determine[s] only whether the district court correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at hand." *Fyock*, 779 F.3d at 995. So long as the district court applied the correct legal rules, the Court may reverse only if resolution of the motion resulted from factual findings, or applications of those findings to law, that were "illogical, implausible, or

without support in the inferences that may be drawn from the record."
*United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (articulating contours of applicable clear error standard). In reviewing the district court's decision, this Court may not "substitute [its] discretion for that of the district court" by "re-weigh[ing] the evidence and overturn[ing] the district court's evidentiary determinations." *Fyock*, 779 F.3d at 1000.

There is no merit to Plaintiffs' argument that the District Court's evidentiary conclusions are not subject to deference accorded under the clear error standard on the theory that "facts relevant to the constitutional arguments in this case—such as whether the challenged provision will promote public safety—are legislative facts." AOB at 15-16. Plaintiffs cite *no* governing precedent actually mandating application of such a distinction here. *Id.* Indeed, the Supreme Court *declined to decide* the standard of deference applicable to legislative facts, *Lockhart v. McCree*, 476 U.S. 162 (1986), and as one of the Third Circuit cases they cite recognized, facts such as those relating to the function or features of certain firearms and "details of various active shooter incidents" are the kinds of facts subject to clear error review in addressing an appeal from the denial of a motion to preliminarily enjoin a firearms regulation, *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey*, 910 F.3d 106, 115 n.3 (3d Cir. 2018)

18

(declining plaintiffs' invitation to conduct a de novo review of such facts, and noting that it would not depart from the clear error standard even if it could). In any case, Plaintiffs make no attempt to identify which facts among the thousands of pages in the District Court record are squarely "legislative" rather than "adjudicative." The Court should decline this scattershot invitation to accord no deference to the District Court's careful review of relevant data, statistics, and analysis.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs seeking an injunction bear the burden of establishing that: (1) their claims are likely to succeed on the merits; (2) they will likely suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; *and* (4) an injunction is in the public interest. *Id.* at 20. Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted). Plaintiffs carry the burden to establish that all four *Winter* factors tip in their favor, even under the alternative sliding scale

19

test. *Id.* at 1135. The District Court properly identified and applied this governing test, 1-ER-0005, and its decision that Plaintiffs did not establish entitlement to the "extraordinary remedy" of a preliminary injunction should be affirmed.

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING THAT PLAINTIFFS WERE UNLIKELY TO SUCCEED ON THE MERITS

In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court held that "the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense." *McDonald v. Chicago*, 561 U.S. 742, 791 (2010). "*Heller* indicated that the Second Amendment does not preclude certain 'longstanding prohibitions' and 'presumptively lawful regulatory measures,' such as . . . 'laws imposing conditions and qualifications on the commercial sale of arms" and certain "longstanding prohibitions on the possession of firearms" by certain groups. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 959 (9th Cir. 2014) (quoting *Heller*, 554 U.S. at 626-27 & n.26).

To analyze a Second Amendment challenge, courts engage in a two-step inquiry: first, they ask whether a law burdens the Second Amendment at all; and second, if it does, they determine the appropriate level of scrutiny. *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc).

Section 27510's narrow limitations on FFL sales and transfers to Young Adults—which permit Young Adults to possess, use, and receive loans, gifts, and other non-FFL transfers of handguns, semi-automatic centerfire rifles, and other types of long guns—are the kind of presumptively lawful statutory provisions that the Supreme Court has said do not implicate the Second Amendment. *See Jackson*, 746 F.3d at 959. But even if they did implicate the Second Amendment, these limitations would be subject only to, and satisfy, intermediate scrutiny.

**A. Section 27510's Age-Based Restrictions on FFL Sales and Transfers Are Consistent with Historical Prohibitions and Are Presumptively Lawful Regulations That Do Not Implicate the Second Amendment**

Where text, history, and tradition show that a challenged law is consistent with the Second Amendment, the restriction "'passes constitutional muster'" and this Court's inquiry "'is complete.'" *Teixeira*, 873 F.3d at 682; *see Heller*, 554 U.S. at 626, 627 n.26. Here, the District Court properly concluded, after articulating the governing law for the inquiry, and surveying the federal cases that have addressed similar age-based restrictions as well as evidence provided by the parties as to relevant text, history, and tradition, "that age-based firearm restrictions such as California Penal code 27510 are longstanding, do not burden the Second

Amendment, and are therefore presumptively Constitutional," consistent

with *Heller*. 1-ER-0011. Thus, Plaintiffs' challenge to Section 27510 fails

on the merits at step one of the relevant framework because Section 27510's

age-based restrictions and limitations on sale of long guns to Young Adults

does not affect conduct within the ambit of the Second Amendment.

> **1. The District Court Did Not Abuse Its Discretion In Joining Every Other Federal Court to Consider the Issue**

The District Court's decision relied upon, and was consistent with,

every federal court decision to have considered the question of whether

limited regulations or restrictions on the ability of Young Adults to purchase

or possess firearms are consistent with the Second Amendment.

Courts addressing similar age-based restrictions on the rights of 18-20

year-olds to purchase or carry firearms have reasoned that such

> statutes enacted to safeguard the public using age-based restrictions on access to and use of firearms are part of a succession of "longstanding prohibitions," *Heller*, 554 U.S. at 626, 128 S.Ct. 2783, that are likely outside the scope of the Second Amendment, because such restrictions are "consistent with" both the "longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety" and the "longstanding tradition of age-and safety-based restrictions on the ability to access arms."

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013)

(quoting *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*

*Firearms, & Explosives*, 700 F.3d 185, 203 (5th Cir. 2012) (*BATF*), *cert. denied*, 571 U.S. 1196 (2014)).

In *BATF*, the Fifth Circuit conducted an exhaustive review of the historical context of limitations on the rights of those under the age of 21 in determining whether the federal government's ban on the sale of handguns to those under the age of 21 through FFLs violated the Second Amendment. The Court concluded that "[m]odern restrictions on the ability of persons under 21 to purchase handguns—and the ability of persons under 18 to possess handguns—seem, to us, to be firmly historically rooted." *BATF*, 700 F.3d at 204. The Court's conviction in this respect was based on an analysis of legal commentary regarding founding-era attitudes, nineteenth-century legislators, courts, and commentators, nineteenth-century case law evidencing the criminalization of providing firearms and other dangerous weapons to minors under the age of 21 and rejecting militia service-based arguments like the ones Plaintiffs make here, and historical evidence showing that the age of majority at the founding and through the first half of the 20th century was 21, even though younger individuals could serve in militias. *Id.* at 200-04. It also noted that by 1923, 22 states and the District of Columbia had established 21 as the minimum age to purchase or use particular firearms. *Id.* at 202.

23

In evaluating another challenge to the federal ban on handgun sales to those under 21 by FFLs, a District Court in the Western District of Virginia also recently stated that "evidence suggests that full adulthood, at the time of the Founding, was not reached until age 21." *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 417 F.Supp.3d 747, 752 (2019) (citing William Blackstone, 1 Commentaries On The Laws Of England 463 (1st ed. 1765) ("So that full age in male or female, is twenty one years . . . who till that time is an infant, and so styled in law."); Infant, Black's Law Dictionary 847 (11th ed. 2019) (legal infancy lasts until age 21) (citing sources from 1878, 1899, and 1974)); *see also id.* (noting that "legal scholars of the time accepted that 'the State may prohibit the sale of arms to minors'" (quoting Thomas M. Cooley, Treatise on Constitutional Limitations 740 n.4 (5th ed. 1883))). And the First Circuit recently concluded that limitations on the ability of Young Adults aged 18-20 to carry firearms in public were presumptively lawful in light of the relevant historical record, observing that "[c]ase law from jurisdictions across the country confirms that during the late nineteenth and early twentieth centuries"—when "minors" included those under 21—"minors' capacity to purchase and own firearms was significantly curtailed." *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387 (D. Mass. 2013), *aff'd*, 783 F.3d 332 (1st Cir. 2015) (citing *United States v.*

24

*Rene E.*, 583 F.3d 8, 14-15 (1st Cir. 2009), *cert. denied*, 558 U.S. 1133 (2010) (compiling cases); Larry D. Barnett, *The Roots of Law*, 15 Am. U.J. Gender Soc. Pol'y & L. 613, 681–86 app. (2007) [showing that the vast majority of states did not lower their age of majority until well into the 20th century].).

And the District Court found particularly persuasive the reasoning of *Mitchell v. Atkins*, a case in the Western District of Washington (currently pending appellate review in this Court) addressing similar state-law restrictions on the abilities of individuals under the age of 21 to purchase semi-automatic centerfire rifles under this Court's precedent and review framework. *Mitchell v. Atkins*, -- F. Supp. 3d --, 2020 WL 5106723 (W.D. Wash. Aug. 2020); 1-ER-0009.

As the District Court concluded, 1-ER-00009-10, these authorities confirm that limitations on the ability of those under the age of 21 to procure firearms from dealers are consistent with the "historical understanding" of the right to keep and bear arms, *Heller*, 554 U.S. at 625, and therefore pass constitutional muster without the need for applying any level of means-end scrutiny. *See Powell*, 926 F. Supp. 2d at 388 (holding as a matter of law at step one that the historical record established that age-based restrictions on licenses to carry enacted for purposes of public safety "comport[] with the

25

Second Amendment and impose[] no burden on the rights of eighteen- to twenty-year-olds to keep and bear arms").

Plaintiffs ask this Court to disregard the historical analysis of the District Court and *every* other federal court to have considered the question presented at step one here. In the course of their analysis, Plaintiffs claim that the District Court "*simply ignored* the great bulk of historical evidence" they presented. AOB 26. But the District Court did nothing of the sort; it expressly acknowledged Plaintiffs' historical analysis and found it unpersuasive in light of the historical evidence collected and reviewed by sister courts over the last decade (in the face of nearly identical arguments to those made here, no less)—including, but not limited to, clear and irrefutable evidence that the age of majority from the time of the founding up through the late 20th century was 21. *See* 1-ER-0008-10.

Further, the District Court properly concluded that its review was *not* limited to a search for regulations directly addressing the rights of 18-20-year-olds to acquire or bear arms solely at the founding of the nation or at the time of ratification in 1791; rather, the District Court looked to *Heller* itself in adopting the Fifth Circuit's counsel that "*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *BATF*, 700 F.3d at 196; 1-ER-0008; *see also* 1-ER-

0009 (quoting *Fyock*, 779 F.3d at 997 ["The Ninth Circuit has noted that, even 'early twentieth century regulations might . . . demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record."].)

### 2. Founding Era Regulations on Age of Militia Service Do Not Overcome Longstanding Regulation of the Age of Majority

Unable to refute the long line of authority that recognizes the authority of states to set the age of majority at 21 for firearms purchases, Plaintiffs rely on founding era regulations that allowed persons under 21 to serve in the militia. But Plaintiffs mistake the age for military service with the separate question of the age at which society can draw a line at the sale of firearms to minors.

Plaintiffs cite no authority or historical records suggesting that the Founders, in contrast to the available records from that era, saw these questions as linked. *Cf.* Blackstone, *supra*, 463. Indeed, Plaintiffs appear to rely on unstated premises, not historical sources, in arguing that the Second

Amendment must apply to persons under 21 exactly as it applies to persons 21 and over.[4]

And even Plaintiffs acknowledge, as they must, "that in the Founding Era (as is still true today), age requirements were 'different for different purposes.'" AOB 31 (quoting 1 BLACKSTONE COMMENTARIES *463). Indeed, today the age of majority is not set uniformly at 18 throughout the United States, or even for all conduct within a single state—*even* for other fundamental rights such as the right to marry and the right to contract. For example, Nebraska permits its residents to purchase long guns at 18, but forbids them to purchase handguns until they reach 21, *see* Neb. Rev. Stat. §§ 69-2403, 69-2404, and it officially sets the age of majority at 19 (unless the individual is married), including for purposes of both marriage (without parental consent) and commencing lawsuits, *see* Neb. Rev. Stat. §§ 25-307, 42-105, 43-2101. Likewise, "under Alabama law, a person, who is under the age of 19 years, has not yet reached the age of majority so as to contract or otherwise give legally binding consent." *United States v. Hale*, 261 F. Supp.

---

[4] Moreover, Plaintiffs fail to carry their argument to its logical—and absurd—result. Plaintiffs quote sources that during the founding era persons as young as 15 could be impressed into militia service. AOB 24-25. Yet Plaintiffs do not argue that the age limit under the Second Amendment should be 15; this is unsurprising in that they cite no authority that the Founders viewed the question that way.

3d 1169, 1172 (N.D. Ala. 2017) (citation and quotation marks omitted); *see also* Ala. Code § 26-1-1.  And although the Twenty-Sixth Amendment prohibits the federal and state governments from raising the voting age any higher than 18, no other provision of the Constitution expressly mandates that states set any particular age of majority for *other* purposes.  *See* U.S. Const. amend. XXVI, § 1; *cf.* U.S. Const. amend. XIV, § 2 (referencing 21 as the original voting age for male citizens at the time of the Fourteenth Amendment's adoption).

In sum, the District Court committed no legal error and acted within its discretion in concluding that Plaintiffs could not establish a likelihood of success at step one.

### B. Even Assuming Second Amendment Rights Are Implicated, Section 27510's Restrictions on FFLs Are Constitutional.

"[C]ourts determine the appropriate level [of review] by considering (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Bauer v. Becerra*, 858 F.3d 1216, 1221-22 (9th Cir. 2017) (quotation marks omitted), *cert. denied*, 138 S. Ct. 982 (2018).  This test "amounts to a sliding scale."  *Id.* at 1222 (quotation marks omitted).  "A law that imposes such a severe restriction on the fundamental right of self defense of the home that it

amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Id.* (quotation marks omitted). "Further down the scale, a law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny." *Id.* "Otherwise, intermediate scrutiny is appropriate." *Id.*

## 1. Section 27510 is Subject to At *Most* Intermediate Scrutiny.

The Ninth Circuit's recent cases have repeatedly held that, for purposes of determining an appropriate level of scrutiny, the "core" of the Second Amendment right is limited to what *Heller* identified: the right to keep and carry "in defense of hearth and home." *Heller*, 554 U.S. at 635; *see United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013), *cert. denied*, 574 U.S. 878 (2014); *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016), *cert. denied sub nom. Silvester v. Becerra*, 138 S.Ct. 945 (2018); *Bauer*, 858 F.3d at 1222; *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018). And the District Court correctly recognized that "[t]here has been 'near unanimity in the post-*Heller* case law that, when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate.'" 1-ER-0012 (quoting *Silvester*, 843 F.3d at 823). It correctly noted this Court's recognition that "[i]f a law creates exceptions to the

30

regulation of a core Second Amendment right, the impact of the burden on that right may be alleviated" such that intermediate scrutiny is appropriate. 1-ER0013 (citing *Chovan*, 735 F.3d at 1138). In other words, "firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Jackson*, 746 F.3d at 961.

In keeping with these principles, federal courts have consistently applied intermediate scrutiny in the context of Second Amendment challenges to statutory limitations on Second Amendment conduct where— as here—such limitations affect only the "discrete category" of 18 to 20-year olds, impose only temporary limitations, and do not amount to a total ban having the effect of "disarm[ing] an entire community." *BATF*, 700 F.3d at 205; *accord Powell*, 926 F. Supp. 2d at 393. Courts consistently reason that where the challenged limitations "only implicate commercial transactions: 'conduct occurring outside the home,'" they do not "implicate a core Second Amendment right." *Hirschfeld*, 417 F. Supp. 3d at 757. Following these principles, courts have repeatedly determined that the federal ban on handgun sales through FFLs to Young Adults aged 18-20 warrants—at the most—intermediate scrutiny, because such a prohibition involves merely commercial transactions, and because (as here), "18-to-20-year-olds may

possess and use handguns for self-defense, hunting, or any other lawful purpose; they may acquire handguns from responsible parents or guardians; and they may possess, use, and purchase long-guns." *BATF*, 700 F.3d at 206-07; *Hirschfeld*, 417 F. Supp. 3d at 757. And *Mitchell* determined that no more than intermediate scrutiny was appropriate where the challenged Washington state law proscribed *both* commercial sales of semi-automatic rifles through FFLs *and even possession* by Young Adults aged 18-20 in public, where—as here—the law nonetheless allowed for exceptions. 2020 WL 5106723, at *1, 5. Courts also emphasize that the "temporary nature of the burden reduces its severity." *BATF*, 700 F.3d at 207.

Plaintiffs attempt to cast Section 27510 as a flat ban that "effectively prohibits an entire class of 'arms'" or a "substantial portion of arms commonly used by citizens for self-defense," thus resulting in a substantial burden warranting strict scrutiny, AOB at 36-37 (citing *Heller*, 554 U.S. at 628, and *Duncan v. Becerra*, 970 F.3d 1133, 1157 (9th Cir. 2020)), but the District Court recognized that claim as specious. Cataloguing the many exemptions for FFL transfers and non-FFL avenues Plaintiffs retain to acquire firearms, the court stated, "Contrary to Plaintiffs' assertions, the California law in question is not a complete ban on the sale, transfer or

supply by a federally licensed firearms dealer of all firearms for persons 18 to 20 years old." 1-ER-0012.

### 2. Section 27510's Age-Based Restrictions on FFL Sales and Transfers Satisfy Intermediate Scrutiny.

California has a substantial interest in increasing public safety and preventing gun violence, including but not solely in the context of mass shootings. Section 27510's narrow limitations on FFL sales and transfers to Young Adults, except as expressly permitted, further those interests by ensuring that those Young Adults with access to long guns have had firearm safety training—either because they have had training and supervision as a member of law enforcement, the Armed Forces or the reserves, or because they have received training by way of a hunter education course. The further limitation on commercial sales and transfers by FFLs of semi-automatic centerfire rifles also reasonably fit the Legislature's interest in ensuring that weapons capable of quickly inflicting violence on large numbers of people remain in the hands of those with proper training.

### a. Proper Scope of Intermediate Scrutiny Inquiry

While it has bite, the intermediate scrutiny test this Circuit applies "is not a strict one." *Silvester*, 843 F.3d at 827. "Intermediate scrutiny requires (1) a significant, substantial, or important government objective, and (2) a

'reasonable fit' between the challenged law and the asserted objective."

*Pena*, 898 F.3d at 979. Contrary to Plaintiffs' suggestions, AOB 39-40, 43,

it does not require the fit between the challenged regulation and the stated

objective to be perfect, nor does it require that the regulation be the least

restrictive means of serving the stated interest. *Jackson*, 746 F.3d at 969.

The government "must be allowed a reasonable opportunity to experiment

with solutions to admittedly serious problems." *Id.* at 969-70.

 This Court has repeatedly recognized that, in conducting this inquiry,

legislative forecasts about the practical effects of a law are not susceptible to

proof with "scientific precision," *Mai v. United States*, 952 F.3d 1106, 1118

(9th Cir. 2020), and the Court's proper role in the face of "policy

disagreements" or "conflicting" evidence is limited to ensuring that the State

has "select[ed] among reasonable alternatives," *Pena*, 898 F.3d at 980

(citation and quotation marks omitted). Further, the Court has recently

confirmed that the Court asks "only whether the evidence 'fairly supports'

[the legislature's] 'reasonable' conclusions," and "[w]hen empirical

evidence is incomplete," the Court "'must accord substantial deference to

the predictive judgments of Congress.'" *Mai*, 952 F.3d at 1118 (quoting

*Pena*, 898 F.3d at 979-80).

In evaluating the statute, courts do not look to evidence "in the technical sense" because "legislatures are not obligated, when enacting their statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review[.]" *Pena*, 898 F.3d at 979 (quotation marks omitted). Rather, the State may "rely on any evidence 'reasonably believed to be relevant' to substantiate its important interests," and the Court "may consider 'the legislative history of the enactment as well as studies in the record or cited in pertinent case law.'" *Fyock*, 779 F.3d at 1000 (citations omitted).

This is *precisely* what the District Court did in conducting its intermediate scrutiny analysis. 1-ER-0015-16. As there was no error in application of the relevant standards, Plaintiffs' "fit" criticisms ask this Court to reweigh the evidence rather than according it the deference it is owed. This Court should decline that invitation.

*Every* challenge to similar restrictions on the ability of Young Adults to procure firearms through a FFL has survived intermediate scrutiny, based in large part on the fact that—like here—the laws limited access through a dealer, but imposed no restriction on the ability of a Young Adult to possess or use a firearm for self-defense purposes, and on social science evidence showing that Young Adults are both disproportionately linked to crime and

35

also less likely to have completely developed those portions of the brain responsible for controlling impulsivity, regulating responsible decision-making, and exercising good judgment. *See BATF*, 700 F.3d at 211; *Mitchell*, 2020 WL 5106723, at *6; *see also Hirschfeld*, 417 F. Supp. 3d at 756-57. As the District Court concluded, Section 27510's limited age restrictions on sale or transfer through FFLs likewise strike a reasonable fit that comports with the Second Amendment. 1-ER-0015-16.

### b. Section 27510's Age-Based Restrictions on FFL Sales and Transfers Serve California's Substantial Interests in Public Safety, Gun Violence Prevention, and Crime Prevention.

"It is beyond question that promoting public safety and reducing incidents of gun violence are legitimate government objectives, as the Ninth Circuit, like many other circuits, has found these interests not merely legitimate but substantial or compelling." *Rupp v. Becerra*, No. 8:17-CV-00746-JLS-JDE, 2018 WL 2138452, at *5 (C.D. Cal. May 9, 2018). And as the Ninth Circuit has recognized, "public safety is advanced by keeping guns out of the hands of people who are most likely to misuse them[.]" *Bauer*, 858 F.3d at 1223.

On appeal, Plaintiffs concede that the "State's asserted interest in promoting public safety is an important objective," AOB 40, but contend

that the requisite reasonable fit is lacking. But the "'legislative history of the enactment as well as studies in the record'" demonstrate "a 'reasonable fit between the government's stated objective[s] and the regulation' considered." *See Pena*, 898 F.3d at 979 (quoting *Fyock*, 779 F.3d at 1000).

> ### c. There is Substantial Evidence that Young Adults Are Disproportionately Disposed to Harm Themselves or Others, Including Because of Their Incomplete Brain Development.

As the legislative history of SB 1100 confirms, the Legislature intended to bring parity to California restrictions on access to handguns and long guns by Young Adults aged 18-20 by raising the minimum age for sale or transfer of long guns through FFLs. 4-ER-0406. In doing so, the Legislature aimed to take an important step toward ensuring public safety, 4-ER-0409, particularly in light of the propensity of Young Adults aged 18-20 to engage in violent crime, and the developing nature of their brains, 4-ER-0405-06.

Although the author's statement regarding SB 1100 did not reference social science, the legislative history shows that the California Chapters of the Brady Campaign offered the following statistics in support of the age restrictions:

- 11,500 of the 26,682 crime guns entered into the California Department of Justice's Firearms Systems database since 2009 were long guns, demonstrating that long guns are often used in the commission of crimes in California;

- The FBI's 2015 report on Crime in the United States showed that in 2015, "23.4 percent of those arrested for murder and non-negligent manslaughter in the U.S. were under 21 and 26.5 percent of those arrested for 'weapons carrying, possession, etc.' were under age 21" (citing FBI 2015 Crime in the United States, https://ucr.fbi.gov/crime-in-the-u.s/2015/crime-in-the-u.s.-2015/tables/table-41);

- Despite making up a large portion of the arrests for violent crimes and weapons crimes and committing 17 percent of gun homicides in the U.S., those aged 18-20 comprised just 4 percent of the U.S. population (citing Uniform Crime Reporting Program Data: Supplementary Homicide Reports, 2015," US Department of Justice, Federal Bureau of Investigation, https://ucr.fbi.gov/nibrs/addendumfor-submitting-cargo-theft-data/shr).

38

4-ER-0405-06. The Brady Campaign also emphasized that "[m]aturity, impulsive or reckless behavior, and responsibility vary greatly among 18-20 year olds." *Id.*

Updated statistics submitted to the District Court show that in recent years in which offenses were broken down into individual years, Young Adults aged 18-20 continued to commit a disproportionately large number of violent crimes, and that indeed the ages of 18-20 were the years in which arrests for homicide, rape, and robbery were their highest. 2-ER-0089. In 2017, although 18-20 year-olds comprised less than 5 percent of the U.S. population, they accounted for more than 15 percent of the homicide and manslaughter arrests reported. *Id.* And arrests in California specifically show that Young Adults commit a disproportionately large portion of the homicides here, too; 18-19 year-olds alone accounted for 11.8 percent of the homicide arrests in the entire State. 2-ER-0126.[5]

---

[5] "Save in unusual circumstances, [this Court] consider[s] only the district court record on appeal." *Lowry*, 329 F.3d at 1024. "'[It is a] basic tenet. . . that parties may not unilaterally supplement the record on appeal with evidence not reviewed by the court below." *Tonry v. Sec. Experts, Inc.*, 20 F.3d 967, 974 (9th Cir. 1994). Yet in attempting to persuade the Court to decide the underlying issues anew and ignore the evidence that was presented to the District Court, without proper deference to the District Court's analysis of social science and other evidence submitted by the parties, Plaintiffs improperly and unilaterally supplement the record and

Moreover, social science has long established that the human brain continues to develop into the early or mid-20s, and that Young Adults under the age of 21 are less likely to have developed the maturity necessary to make responsible decisions than older counterparts, that they are more reactive and take more risks. 2-ER-0179, 0183-84, 88 ("the adolescent brain is structurally and functionally vulnerable to environmental stress" and thus this age group is predisposed to "quickness to anger, intense mood swings, and making decisions on the basis of 'gut' feelings"); 2-ER-0193 (minors are uniquely prone to "negative emotional states").) Indeed, science shows

---

their arguments with citations to statistical and other evidence that was available to Plaintiffs in 2019 before the filing of their motion (or available during the pendency of their motion in 2020), but never submitted to the District Court for review in either Plaintiffs' exhibits or in their motion for preliminary injunction. *See*, *e.g.*, AOB 41 n.7 (statistical evidence regarding criminal arrest rates and census data); AOB 42 n.8 (same); AOB 6 n. 2 & 46-47 (decades-old statistics regarding defensive gun use and publications discussing types and features of firearms, all of which were available to Plaintiffs prior to the filing of their motion but not provided to the District Court); *see generally* SER017-53 (Plaintiffs' memorandum in support of motion); SER003-16 (Plaintiffs' reply brief). This material likely would not meet the extraordinary circumstances warranting supplementation, but Plaintiffs should have brought a "motion or formal request" seeking notice or supplementation of the record if they wished to have it considered for the first time on appeal. *Lowry*, 329 F.3d at 1024-25. They did not, so such material and related argument should be disregarded. *Id.* Plaintiffs should first present such information, if at all, to the District Court in the underlying action.

that young adults have weaker impulse control and "demonstrate poorer

emotional regulation in the context of threat than other age groups," which

makes them uniquely disposed to use firearms "in the very situations in

which adolescents are most developmentally vulnerable: in the context of

high emotional arousal, situations that require rapid, complex social

information processing, those that involve reinforcing or establishing peer

relationships (i.e., showing off), or in conditions of perceived threat." 2-ER-

0206, 0221-0222.[6]

Such evidence of the prevalence of violent crime committed by

Young Adults aged 18-20, coupled with social science evidence definitely

establishing that brain maturation in that age group is not complete, is

precisely the social science support that the Fifth Circuit in *BATF*, the

Seventh Circuit in *Horsley v. Trame*, and the Western District of Virginia in

*Hirschfeld* determined established support for adopting restrictions on the

means for Young Adults to purchase firearms from FFLs and to establish

entitlement to a FOID card (in Illinois). *See BATF*, 700 F.3d at 207-11;

*Horsley v. Trame*, 808 F.3d 1126, 1132-34 (2015); *Hirschfeld*, 417 F. Supp.

3d at 751. The District Court found the Congressional evidence discussed in

---

[6] Webster, et al., also note the enhanced suicide risk in Young Adults as a reason for limiting firearm carry and access. 2-ER-0222.

these authorities persuasive in determining that intermediate scrutiny was correctly applied here, and in rejecting Plaintiffs' contention that no data supported an appropriate fit between the State's goal and Sction 27510's restrictions. 1-ER-0015. Here, too, evidence regarding Young Adult-perpetrated crime, coupled with the social science showing that Young Adults may not yet be capable of making responsible decisions about the use of firearms, demonstrated much more than a reasonable fit between the Legislature's desire to curb gun violence and its promulgation of limited restrictions on the manner in which Young Adults may procure firearms.

Plaintiffs argue that there is no evidence that age-based limitations on access to firearms will prevent crime, promote public safety, or prevent any mass shootings. Further, Plaintiffs demand that the State comport with a standard not required by law. AOB 40, 43. If states were required to show evidence that a particular approach to curtailing violence had *already* proved effective, or to *guarantee* that it would prove effective, states would be prevented from innovating and experimenting with new ways to address, for example, "the problem of handgun violence in this country[.]" *See Heller*, 554 U.S. at 636. But this is not the proper standard, as the Ninth Circuit's decision in *Pena* shows. Applying intermediate scrutiny, the court upheld California's "microstamping requirement," a law that was "the first of its

42

kind," and "an experimental solution to admittedly serious problems." *Pena*, 898 F.3d at 984; *accord McDonald*, 561 U.S. at 785 (plurality op.) (Second Amendment "by no means eliminates" a state's "ability to devise solutions to social problems that suit local needs and values"). California, like other states, may experiment with placing targeted limitations on the manner in which commercial sales and transfers are made to Young Adults by FFLs in an attempt to reduce the incidence of gun violence, suicide, accidental death or injury, and other harms without offending the core Second Amendment right.

> **d.   Requiring Young Adults Without Military or Law Enforcement Training to Purchase Long Guns Via the Hunting License Exemption Is a Modest Requirement that Reasonably Fits California's Public Safety Goal.**

Plaintiffs argue that a vast array of firearms regulations already in place are sufficient to protect the public safety, including the firearm safety certificate requirement generally applicable to firearms purchases. *E.g.*, AOB at 7. First of all, the hunting license exemption provided in Section 27510 is an analogue to an exemption from the Firearm Safety Certificate ("FSC") requirement for those with valid, unexpired hunting licenses; those who possess and present valid, unexpired hunting licenses are not required to take and pass the FSC exam or present a FSC at the point of sale for any

43

long gun purchases. *See* Cal. Penal Code §§ 31700(c) & 31615. Young

Adults thus are *not* required to take and pass two training courses or two

exams to acquire long guns under the hunting license exemption, as

Plaintiffs wrongly claim. AOB 7. In developing the hunting license

exemption to the firearm safety certificate requirement of California Penal

Code § 31615 now contained in Penal Code § 31700(c), the Legislature

clearly compared the scope and components of the firearm safety certificate

educational program with that of the hunter education program. Legislative

analysis from the 2013 legislative session demonstrates that the Legislature

considered that "[t]he amount of firearm safety information included in the

hunting education course is more extensive than that in the safety certificate

education component," and the broader scope of the hunter education

course's firearm safety information "prompt[ed] the exemption in [SB 683]

from the safety certificate requirement for those in possession of a hunting

license." 2-ER-0240. And, of course, the firearm safety certificate program

does not include any in-person training component; it merely requires

passage of a multiple-choice test and a safe handling demonstration, all of

which can be accomplished at a firearms dealer location at the point of sale

of the firearm. 13-ER-2628. The Legislature certainly could have

reasonably determined that a more intensive firearms training program

44

involving an-in person instructive component—whether through the rigors of military or law enforcement training, or a hunter education course— would better prepare Young Adults in light of science regarding the immaturity and impulsivity of that age group.

The District Court properly concluded that hunter education and licensing is a modest requirement, not nearly of constitutional import. 1-ER-0014 (discussing course and associated fees). Neither any small delay occasioned by the availability of follow-up hunter education classes (notably not subject to State control) nor the imposition of minor fees is so onerous as to substantially impinge Young Adults' Second Amendment rights. *See*, *e.g.*, *Silvester*, 843 F.3d at 831 (Thomas, C.J., concurring) ("delay has not always been associated with government regulation," and "the ability to immediately exercise Second Amendment rights has no foundation in history"). The standard fee for the online portion of the hunter education course is $28.95; this fee is virtually identical to the $25 fee imposed for the procurement of a firearm safety certificate. *See* 4-ER-0550; *see also* 2-ER-0244.[7] Further, despite Plaintiffs' contentions, hunter education courses are widely available and merely require signing up in advance. 2-ER-0250 (as

---

[7] Available follow-up course locations and sign-up are readily accessible online at https://register-ed.com/programs/california/161.

of December 13, 2019, there were 130 open seats in hunter education courses across California through January 11, 2020, including courses available in mid-December); 2-ER-0261 (as of December 10, 2019, 221 seats were available in hunter education courses located within 75 miles of San Diego County zip code 92101 through September 7, 2020).

Moreover, substantial evidence in the record shows that Young Adults across the State have made ample use of the exemptions set forth in Section 27510 in order to purchase or receive transfer of long guns since SB 1100's amendments took effect on January 1, 2019. Department of Justice data regarding long gun sales and transfer transactions from January 1, 2019 through December 23, 2019 show that Young Adults aged 18-20 purchased or otherwise received transfer of 3,789 long guns. 2-ER77-80.[8]

Nor does it appear that Section 27510's restrictions have had any significant impact on the ability of Californians generally or Young Adults specifically to obtain the requisite hunter education to secure a valid hunting license. The California Department of Fish and Wildlife reported that, as of October 31, 2019, with two months of 2019 left to go, it had sold 193,771 annual resident hunting licenses and 5,814 lifetime hunting licenses—

---

[8] These long gun transactions through FFLs included sales, private party transfers, pawn or consignment redemptions, and long gun loans.

46

numbers consistent with the reported full-year numbers for each of the prior nine years. 2-ER-0268-69.

Because Plaintiffs assert a facial challenge to SB 1100 and SB 61's amendments to Section 27510, they "must establish that no set of circumstances exists under which the [regulation or statute] would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Chem. Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992). In other words, they must show that the law is unconstitutional in *all* of its applications. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Where, as here, laws have a "plainly legitimate sweep," a facial challenge must fail. *See id.* at 449 (citation and internal quotations omitted). Given the continued prevalence of both firearm sales pursuant to available exemptions to Young Adults aged 18-20 and the unwavering rate of hunting license issuance following the enactment of SB 1100's limitations on FFL sales and transfers, Plaintiffs cannot meet this demanding standard.

### e. Limiting Sales and Transfers of Long Guns Through FFLs Appropriately Serves the Legislature's Desire to Limit Gun Violence Occasioned by Mass Shootings.

The Legislature's decision to limit access to firearms obtained from licensed dealers in order to serve the interest of limiting gun violence effected through mass shootings[9] is supported by evidence regarding the manner in which mass shooters procure their weapons, the proliferation of mass shootings more generally, and—despite Plaintiffs' contentions otherwise—the incidence of mass shootings by Young Adults.

The Legislature's concern with instances of mass shootings was justified, even if Plaintiffs believe that the risk of mass shootings was minor. By the end of July 2019, media reported that California had experienced 32 shootings in which 4 or more people were injured or killed. 2-ER-0271. The San Francisco Chronicle reported on July 31, 2019, that California had experienced 67 mass shootings in the last 2 decades, and that they have become increasingly deadly, with all but two of the deadliest having occurred between the years of 2011 and 2018. 2-ER-0276.

---

[9] Plaintiffs attempt to limit the scope of the Legislature's focus to "mass school shootings," but the Legislature's amendments to Section 27510 through SB 61 following the Poway synagogue shooting in April 2019 demonstrate that the Legislature aimed to curtail incidences of mass shootings more generally.

48

Further, evidence in the record supported the notion that the vast majority of the guns used in mass shootings are procured from dealers or other legal sources. Mother Jones, a news organization that maintains a database cataloguing mass shootings in the United States since 1982, reports that of the 114 mass shootings in the United States from 1982 through August 5, 2019, 74 percent involved firearms the shooter procured legally. 3-ER-0292; *see also* 3-ER-0299 (*New York Times* reported in February 2018 that "A vast majority of guns used in 19 recent mass shootings were bought legally and with a federal background check," including the AR-15 style rifle used by 19-year-old Nikolas Cruz in the Parkland, Florida shooting that killed 17 people) (cited with approval as evidence lending "support to [a] legislature's conclusion that a law proscribing semiautomatic assault weapons . . . will help curtail outbreaks of mass violence" in *Worman v. Healey*, 922 F.3d 26, 40 (1st Cir. 2019)).

The Legislature rightfully could have determined that this number, coupled with both the disproportionate propensity to commit homicide of 18-20 year-olds and the lack of emotional and impulse control of Young Adults in that age group, supported a recalibration of access to firearms ensuring both more limited access to deadly weapons, and a focus on firearm safety education.

49

####    f.    SB 61's Further Limitations on Access to Semi-Automatic Centerfire Rifles Are Justified.

Limiting access to semi-automatic centerfire rifles for Young Adults who the social science establishes are generally more prone to impulsive or reckless behavior as their brains continue to develop is one rooted in common sense. There can be no debate but that "[s]emiautomatic [] weapons permit a shooter to fire multiple rounds very quickly, allowing him to hit more victims in a shorter period of time," and that AR-15-style semi-automatic weapons (used with large capacity magazines) "have been the weapons of choice in many of the deadliest mass shootings in recent history, including horrific events in Pittsburgh (2018), Parkland (2018), Las Vegas (2017), Sutherland Springs (2017), Orlando (2016), Newtown (2012), and Aurora (2012)." *Worman*, 922 F.3d at 39.

Indeed, Plaintiffs' own exhibit touting "the practical benefits of being able to engage [shoot] a lot of pigs at a time," to "take multiple shots without losing sight of an animal" with a semi-automatic rifle (unlike with a bolt action rifle), and to "take a quick follow-up shot" with an AR-15 style rifle "if you've got multiple animals or you miss" underscores the inherently dangerous nature of semi-automatic weapons when such weapons are placed in the hands of an untrained or immature shooter: faster shooting, less

50

opportunity for victims to escape, and the ability to effect violence on multiple targets simultaneously.  5-ER-0947.  And the social science and medical community commentary overwhelmingly shows that the damage caused by the higher caliber, higher speed bullets used in "modern sporting rifles" akin to the AR-15 and other semi-automatic centerfire rifles cause more traumatic injuries and result in a significantly higher incidence of persons wounded or killed.  3-ER-0319; 3-ER-0325 ("Semiautomatic rifles are designed for easy use . . . and fire high velocity bullets, enabling active shooters to wound and kill more people per incident.").[10]  By limiting commercial sales or transfers to Young Adults of these destructive weapons to those with extensive safety and firearms training, the Legislature made reasonable judgments well-suited to protect the public's inarguable interest in public safety.

Further, the limitation on access to semi-automatic centerfire rifles will not substantially burden Young Adults who wish to purchase firearms for self-defense or other lawful uses.  *Cf. Pena*, 898 F.3d at 978 ("[B]eing unable to purchase a subset of semiautomatic weapons, without more, does not significantly burden the right to self-defense in the home." (citing *Heller*,

---

[10] *Accord Worman*, 922 F.3d at 39-40 (collecting authorities).

554 U.S. at 626)). Although semi-automatic rifles and shotguns *have* been

popular in the past with Young Adults in California (Department of Justice

data shows that between 2014 and December 23, 2019, Young Adults aged

18-20 completed 31,107 and 3,879 sale or transfer transactions of those

firearms, respectively, and 20 transactions involving a combination of semi-

automatic rifles and shotguns), Young Adults *also* purchased or received

transfer of many other types of long guns in that same period, including

pump-action shotguns (21,940 transactions), bolt action rifles (15,740

transactions), pump action rifles (197 transactions), lever action rifles (2,703

transactions), lever action shotguns (45 transactions), single shot shotguns

(436 transactions), single shot rifles (223 transactions), and many others. 2-

ER-77. There are ample other options—popular options—available for

those Young Adults who are (temporarily) unable to procure semi-automatic

centerfire rifles by immediate family transfer. 5-ER-0906 ("Bolt action

rifles are the most common hunting rifles . . . today.").

Nonetheless, Plaintiffs claim that the panoply of long gun options

available to those Young Adults who choose to use the hunter's license

exemption to arm themselves is insufficient to allow them to engage in

"effective self-defense," purportedly because "these leftover types of

firearms are uniquely ill-suited to personal self-defense." AOB 46. Again,

Plaintiffs did not submit the evidence on which they base these claims to the District Court, and thus it should be disregarded in its entirety. *See supra* n.5. Nonetheless, Plaintiffs' own sources provide substantial bases to support the District Court's conclusion that the availability of these options, but not semi-automatic centerfire rifles, does not place a substantial burden on Young Adults' ability to defend themselves or subject them to a significantly higher risk of harm that would undermine the reasonable fit between the state's public safety goals and Section 27510's limitations. For example, Plaintiffs also acknowledge that "many Americans use [shotguns] for self-defense," but argue that "they suffer from several well-known weaknesses as self-defense firearms." AOB 47. But even the two sources Plaintiffs cite for the first time on appeal for this notion, without requesting judicial notice, extoll the virtues of shotguns for self-defense and even suggest that shotguns may be *preferable* to military-style weapons or handguns for home-defense purposes. *See* AOB 47 (citing Jeremy Stafford, *Pros and Cons of a Home-Defense Pump Shotgun*, GUNS & AMMO (Mar. 20, 2018), https://bit.ly/3336cic; Richard Douglas, *The Complete Guide to Home Self Defense Guns: Our Top 5*, The National Interest (Oct. 13, 2019), https://bit.ly/2IKZG8X).

By contrast, the Legislature's intention to limit access to certain powerful and injurious firearms for those most likely to misuse them certainly "would be achieved less effectively absent" SB 61's limitation. *Silvester*, 843 F.3d at 829.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT THE REMAINING *WINTER* FACTORS WARRANTED DENIAL OF A PRELIMINARY INJUNCTION

Because Plaintiffs cannot establish a likelihood of success on their Second Amendment claim—"the most important factor"—this Court need not address the remaining preliminary injunction factors to affirm. *See Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019). Nevertheless, the District Court also properly determined that Plaintiffs did not establish entitlement to a preliminary injunction on any of the remaining *Winter* factors.

### A. Plaintiffs Failed to Show They Will Suffer Any Irreparable Harm.

Plaintiffs claim that Section 27510 imposes a "significant, ongoing harm" to their Second Amendment rights, but they articulate nothing more in the way of irreparable harm than an abstract injury premised on their claimed deprivation of constitutional rights. AOB 51-52. This is questionable, at best. Because the individual plaintiffs are no longer subject

54

to Section 27510's under-21 age restriction, *see infra* Argument § III, they cannot now demonstrate that they would or even *could* suffer any irreparable harm during the pendency of the action below. All three individual plaintiffs may now purchase or otherwise receive transfer of *any* handgun or long gun not otherwise prohibited under California law, including semi-automatic centerfire rifles.

Even before they turned 21, *none* of the individual plaintiffs alleged in the SAC or in their declarations submitted with the preliminary injunction motion any desire to acquire a semi-automatic centerfire rifle, or even any *particular* firearm—a fact that negates any contention that the hunting license exemption available to them is insufficient to avoid harm. *See* 3-ER-0350-52, 3-ER-0353-56, 3-ER-0357-60. None stated that he could not acquire a firearm of his choosing through a parent, grandparent, or spouse (or that he had tried do so). *Id.* None stated that he ever even attempted to register for a hunter education course in order to qualify for Section 27510's hunting license exemption. *Id.* And none stated that he ever attempted to seek out firearms training or target practice opportunities at a shooting range or gun club, where he could be loaned a firearm for purposes of target and safe handling practice. *Id.*; *cf.* Cal. Penal Code § 27910.

While the remaining dealer and institutional plaintiffs vaguely claim harms to unidentified customers and members, they identify no *particular* harm on the part of any *specific* customer or member beyond the purported violation of the right itself. Even if they could identify some likelihood of success on the merits, this kind of "[s]peculative injury does not constitute irreparable injury" warranting injunctive relief. *See Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984); *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction," even in the First Amendment context (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 112-13 (1983)).[11]

As discussed above and recognized by the District Court, Young Adults still retain the ability to possess and use handguns and long guns— including semi-automatic centerfire rifles—for the purposes of self-defense in the home and other lawful purposes. Unless otherwise prohibited by law, they may still receive transfers from parents, grandparents, and spouses,

---

[11] The three dealer plaintiffs allege vaguely that they have ceased providing firearm safety and hunting classes to Young Adults, but none alleges that any law enforcement authority has threatened action for violation of Section 27510 based on the provision of any such educational classes, or that such classes are or were at any point unavailable to Young Adults through non-FFL sources.

practice at shooting ranges, receive loans of firearms for limited periods of time, under supervision, or at a range, and purchase a wide variety of long guns if they complete the requisite training and secure a valid hunting license. *See supra* at pp.6-11. The District Court did not abuse its discretion in concluding that these options undermined any claim of irreparable injury. 1-ER-0017-18 (citing *Hirschfeld*, 417 F.Supp.3d at 757). And any inconvenience Young Adults experience in having to shop or rent from a somewhat circumscribed universe of firearms is inherently only temporary, as—like the individual plaintiffs here—they will be outside the reach of Section 27510's age limitations on sales and transfers as soon as they turn 21. *BATF*, 700 F.3d at 207; *Hirschfeld*, 417 F.Supp.3d at 755. The harm Young Adults purportedly will suffer by the imposition of this "mere condition or qualification" on commercial transactions with FFLs is not substantial, even it imposes a modest inconvenience. *Hirschfeld*, 417 F.Supp.3d at 755 (quotation marks and internal punctuation omitted).

The District Court also properly concluded that—although it was just one factor in the analysis—Plaintiffs' delay in seeking injunctive relief "contradict[s]" their "claim that a deprivation of their rights for any amount of time is sufficient to demonstrate irreparable harm." 1-ER-0018.

Plaintiffs waited not just two months after filing the First Amended Complaint and three months after filing their initial complaint to file for injunctive relief, 1-ER-0018; they waited more than *nine months* after SB 1100 took effect to claim that they required speedy relief to avoid irreparable harm. 14-ER-2917. Taking time "to prepare an extensive preliminary injunction filing" simply does not account for this delay. AOB 52. "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action" or existence of irreparable harm, even in cases alleging deprivation of fundamental rights. *Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984) (considering First Amendment claim); *see also Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Indeed, a delay of eight months—even *less* than Plaintiffs' delay here—is enough for a District Court to "'legitimately think it suspicious that the party who asks to preserve the status quo through interim relief has allowed the status quo to change through unexplained delay.'" *Miller for & on Behalf of N.L.R.B. v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citation omitted).

Plaintiffs here do not seek to preserve the status quo that has existed for the past two years; instead, they seek to roll back the clock despite their

58

own failure to move quickly to challenge the implementation of SB 1100,

even though at least some subset of the Plaintiffs had knowledge of the

effect SB 1100 would have on the transfer of long guns through licensed

dealers several months before SB 1100 was enacted. *See*, *e.g.*, 5-ER-0376

(stating "FPC strongly opposed the legislation, Senate Bill 1100, . . . that led

to enactment of the challenged law"); 5-ER-0415. The District Court did not

abuse its discretion in finding Plaintiffs failed to establish any irreparable

harm that could support the extraordinary remedy sought.

**B.   The Balance of Equities and Public Interest Tip Overwhelmingly in Defendants' Favor.**

In exercising sound discretion, a District Court "must balance the

competing claims of injury and consider the effect of granting or

withholding the requested relief," paying "particular regard for the public

consequences in employing the extraordinary remedy of injunction."

*Winter*, 555 U.S. at 24 (quotation marks and citation omitted). Importantly,

the balance of the equities and the public interest "merge when the

Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435

(2009). While the District Court acknowledged Plaintiffs' argument that the

balance of harms should tip in their favor because of the alleged deprivation

of individual rights and Plaintiffs' view that existing firearms regulations

would avoid any public harms, it correctly noted that "[w]hen undertaking this weighing 'of the public interest against a private interest, the public interest should receive greater weight.'" 1-ER-0019 (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (internal quotation marks omitted)). The District Court's conclusion that "[t]he potential harm of enjoining a duly-enacted law designed to protect public safety outweighs Young Adults' inability to secure the firearm of their choice without proper training," *id.*, was not "illogical, implausible, or without support in the inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1262.

Even if this Court were to conclude that Section 27510's restrictions on transfers to Young Adults sweep more broadly than necessary (and they do not), this Court could and *should* still affirm denial of the preliminary injunction based on the balance of the equities: the serious public interest in avoiding firearm violence on the one hand, and Plaintiffs' temporary and incomplete limitation on choice on the other. *See Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193-94 (E.D. Cal. 2015), *aff'd*, 637 Fed. Appx. 401 (9th Cir. 2016) (granting preliminary injunction even where it found likelihood of success on the merits, reasoning that the "costs of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave"); *accord*

*United States v. Masciandaro*, 638 F.3d 458, 475-76 (4th Cir. 2011) (Wilkinson, J.) ("miscalculat[ion] as to Second Amendment rights" could lead to "unspeakably tragic act[s] of mayhem").

## III. THE INDIVIDUAL PLAINTIFFS' CLAIMS ARE MOOT BECAUSE THEY ARE NOW 21

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English*, 520 U.S. at 67 (citation omitted). "If a claim is moot, it 'presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.'" *McCraw*, 719 F.3d at 344 (citation omitted)); *accord Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797-98 (9th Cir. 1999). Because Mssrs. Jones, Furrh, and Yamamoto have all attained the age of 21, Section 27510's age restrictions no longer apply to prohibit a FFL from selling or otherwise transferring a firearm to any of them, and no live case or controversy remains for which this Court may provide them review or relief. *See McCraw*, 719 F.3d at 344 (dismissing as moot claims of plaintiffs challenging a law prohibiting 18-20-year-olds from obtaining concealed carry licenses because plaintiffs had turned 21 during pendency of action);

*BATF*, 700 F.3d at 191 (same, in lawsuit challenging federal law prohibiting FFLs from selling handguns to persons under 21).

As noted above in footnote 1, the appellate record is not precise in recounting the birthdates of the individual plaintiffs, but it is clear from the record that Plaintiffs Jones and Furrh have aged out, as they represented in declarations that they were 20 more than one year ago. *See* 3-ER-0350-52 and 3-ER-0353-56. Plaintiff Yamamoto presents a slightly different record, as he represented he was 19 when he filed his declaration in support of the preliminary injunction motion, *see* 3-ER-0357-60, but Defendants understand, based on Plaintiffs' representations in litigation, that he has in fact passed his 21st birthday.[12]

The exception to the "usual rule" for issues "capable of repetition, yet evading review" cannot save the individual plaintiffs' claims; none of them will ever be under 21 again, so there is no possibility that their ability to purchase from or complete a transfer through a federally licensed firearms dealer could again be impacted by Section 27510's under-21 age restriction challenged in this action. *See DeFunis v. Odegaard*, 416 U.S. 312, 318-19

---

[12] As represented in footnote 1, Defendants believe this fact is undisputed but will supplement the record with Plaintiffs' discovery responses if preferred by the Court.

(1974) (per curiam).  That others in California under 21 remain affected by Section 27510 does not alter this fact or legal posture; the exception requires "'a reasonable expectation that the *same complaining party* [will] be subject to the *same action* again.'"  *United States v. Juvenile Male*, 564 U.S. 932, 938 (2011) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)) (emphases added); *see also*, *e.g.*, *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000); *Madison Sch. Dist. No. 321*, 177 F.3d at 798.

Moreover, Plaintiffs expressly and repeatedly affirmed to the District Court, including in the SAC and the parties' joint case management statement, that they seek "*soley* injunctive and declaratory relief" and "[*n*]*o* damages," SER075 (emphases added), and they do *not* seek to maintain this case as a class action, SER078.[13]  Nor can Plaintiffs' ambiguous request for "remedies available" save the individual plaintiffs' claim from mootness in light of their repeated statements that they seek solely injunctive and declaratory relief.  14-ER-2847, ¶ 3; 14-ER-2911.  The Supreme Court has

---

[13] *See also* 14-ER-2841, ¶ 2; 14-ER-2853, ¶ 21 ("The relief sought in this action is declaratory and injunctive in nature"); 14-ER-2874-75, ¶¶ 75, 76-77; 14-ER-2877-78; SER080 (District Court order noting "Plaintiffs are seeking solely declaratory and injunctive relief" in granting parties' joint request for excusal from early neutral evaluation conference); SER084-085 ("Plaintiffs allege no claims for monetary damages; they seek injunctive and declaratory relief.").

cautioned that even "a claim for nominal damages, extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness, b[ears] close inspection" and may "not genuinely revive the case." *Arizonans for Official English*, 520 U.S. at 71; *see also*, *e.g.*, *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018). Thus, Plaintiffs' claims are subject to no applicable exception, and the appropriate course is for the Court to remand the case with instructions to dismiss the individual plaintiffs' claims. *See Murphy v. Hunt*, 455 U.S. 478 (1982) (case moot where plaintiff neither sought damages nor sought to represent a class, and injunctive relief would no longer provide any benefit); *DeFunis*, 416 U.S. at 317 (same); *McCraw*, 719 F.3d at 350.[14]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Court affirm the District Court's denial of Plaintiffs' motion for preliminary injunction and remand the matter with instructions to the District Court to dismiss as moot the claims of individual plaintiffs Matthew Jones, Thomas Furrh, and Kyle Yamamoto.

---

[14] Should Plaintiffs contest the mootness of the individual plaintiffs' claims, Defendants respectfully request the opportunity to submit supplemental briefing addressing the issue.

Dated:  January 19, 2021          Respectfully submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Jennifer E. Rosenberg*
JENNIFER E. ROSENBERG
Deputy Attorney General
*Attorneys for Defendants-Appellees Xavier Becerra, in his official capacity as Attorney General of the State of California, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms*

SA2020304389
63850767.docx

65

20-56174

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**Matthew Jones, *et al.*,**

Plaintiffs-Appellants,

**v.**

**Xavier Becerra, in his official capacity as Attorney General of the State of California, *et al.*,**

Defendants-Appellees.

---

## STATEMENT OF RELATED CASES

*Mitchell v. Atkins*, Ninth Circuit Case No. 20-35827 (appeal docketed September 22, 2020), raises closely related issues in addressing Washington state law imposing age limitations on the sale of certain firearms to those under the age of 21 by federally licensed firearms dealers.

Dated:  January 19, 2021          Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Jennifer E. Rosenberg*
JENNIFER E. ROSENBERG
Deputy Attorney General
*Attorneys for Defendants-Appellees*

66

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-56174 (Jones v. Becerra)

I am the attorney or self-represented party.

**This brief contains** | 13,796 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

  ○ it is a joint brief submitted by separately represented parties;

  ○ a party or parties are filing a single brief in response to multiple briefs; or

  ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Jennifer E. Rosenberg | **Date** | Jan 19, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/2018*

20-56174

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**Matthew Jones, *et al.*,**

Plaintiffs-Appellants,

**v.**

**Xavier Becerra, in his official capacity as Attorney General of the State of California, *et al.*,**

Defendants-Appellees.

---

## CIRCUIT RULE 28-2.7 ADDENDUM TO APPELLEES' ANSWERING BRIEF

Except for the following, all applicable statutes, etc., are contained in the brief or addendum of Plaintiffs-Appellants.

---

## TABLE OF CONTENTS

U.S. Const. amend. XIV, § 2............................................ ADDENDUM 003

U.S. Const. amend. XXVI, § 1 ....................................... ADDENDUM 004


Cal. Penal Code

    § 16720 ................................................................ ADDENDUM 005

    § 16960 ................................................................ ADDENDUM 006

    § 26545 ................................................................ ADDENDUM 008

    § 27585 ................................................................ ADDENDUM 009

    § 27880 ................................................................ ADDENDUM 012

**ADDENDUM**
**TABLE OF CONTENTS (CONT'D)**

§ 27885 ................................................................ ADDENDUM 014

§ 27881 ................................................................ ADDENDUM 015

§ 27950 ................................................................ ADDENDUM 016

§ 27910 ................................................................ ADDENDUM 017

§ 31700 ................................................................ ADDENDUM 018

Case: 20-56174, 01/20/2021, ID: 11968951, DktEntry: 24, Page 81 of 98

Section 2. Apportionment of Representatives, USCA CONST Amend. XIV, § 2

---

United States Code Annotated
  Constitution of the United States
    Annotated
      Amendment XIV. Citizenship; Privileges and Immunities; Due Process; Equal Protection;
      Apportionment of Representation; Disqualification of Officers; Public Debt; Enforcement

U.S.C.A. Const. Amend. XIV, § 2

Section 2. Apportionment of Representatives

Currentness

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

<For complete text of Amendment XIV, see USCA Const Amend. XIV-Full Text>

U.S.C.A. Const. Amend. XIV, § 2, USCA CONST Amend. XIV, § 2
Current through P.L. 116-259. Some statute sections may be more current, see credits for details.

---

**End of Document** &copy; 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

United States Code Annotated
    Constitution of the United States
        Annotated
            Amendment XXVI. Right to Vote; Citizens Eighteen Years of Age or Older

U.S.C.A. Const. Amend. XXVI

Amendment XXVI. Right to Vote; Citizens Eighteen Years of Age or Older

Currentness

**Section 1.** The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

**Section 2.** The Congress shall have power to enforce this article by appropriate legislation.

U.S.C.A. Const. Amend. XXVI, USCA CONST Amend. XXVI
Current through P.L. 116-259. Some statute sections may be more current, see credits for details.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. ADDENDUM 004    1

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
    Title 1. Preliminary Provisions (Refs & Annos)
    Division 2. Definitions (Refs & Annos)

West's Ann.Cal.Penal Code § 16720

§ 16720. Immediate family member defined

Effective: January 1, 2012
Currentness

As used in this part, "immediate family member" means either of the following relationships:

(a) Parent and child.

(b) Grandparent and grandchild.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

West's Ann. Cal. Penal Code § 16720, CA PENAL § 16720
Current with all laws through Ch. 372 of 2020 Reg.Sess.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 1. Preliminary Provisions (Refs & Annos)
        Division 2. Definitions (Refs & Annos)

West's Ann.Cal.Penal Code § 16960

§ 16960. Operation of law defined

Effective: January 1, 2020
Currentness

As used in Article 1 (commencing with Section 26500) of Chapter 1 of Division 6 of Title 4, "operation of law" includes, but is not limited to, any of the following:

(a) The executor, personal representative, or administrator of an estate, if the estate includes a firearm.

(b) A secured creditor or an agent or employee of a secured creditor when a firearm is possessed as collateral for, or as a result of, a default under a security agreement under the Commercial Code.

(c) A levying officer, as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure.

(d) A receiver performing the functions of a receiver, if the receivership estate includes a firearm.

(e) A trustee in bankruptcy performing the duties of a trustee, if the bankruptcy estate includes a firearm.

(f) An assignee for the benefit of creditors performing the functions of an assignee, if the assignment includes a firearm.

(g) A transmutation of property between spouses pursuant to Section 850 of the Family Code.

(h) A firearm received by the family of a police officer or deputy sheriff from a local agency pursuant to Section 50081 of the Government Code.

(i) The transfer of a firearm by a law enforcement agency to the person who found the firearm where the delivery is to the person as the finder of the firearm pursuant to Article 1 (commencing with Section 2080) of Chapter 4 of Title 6 of Part 4 of Division 3 of the Civil Code.

(j) The trustee of a trust that includes a firearm and that was part of a will that created the trust.

(k) A person acting pursuant to the person's power of attorney in accordance with Division 4.5 (commencing with Section 4000) of the Probate Code.

(*l*) A limited or general conservator appointed by a court pursuant to the Probate Code or Welfare and Institutions Code.

(m) A guardian ad litem appointed by a court pursuant to Section 372 of the Code of Civil Procedure.

(n) The trustee of a trust that includes a firearm that is under court supervision.

(*o*) A special administrator appointed by a court pursuant to Section 8540 of the Probate Code.

(p) A guardian appointed by a court pursuant to Section 1500 of the Probate Code.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012. Amended by Stats.2019, c. 110 (A.B.1292), § 1, eff. Jan. 1, 2020.)

West's Ann. Cal. Penal Code § 16960, CA PENAL § 16960
Current with all laws through Ch. 372 of 2020 Reg.Sess.

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
   Penal Code (Refs & Annos)
      Part 6. Control of Deadly Weapons (Refs & Annos)
         Title 4. Firearms (Refs & Annos)
            Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
               Chapter 1. License Requirement for Sale, Lease, or Transfer of Firearms (Refs & Annos)
                  Article 1. License Requirement and Miscellaneous Exceptions (Refs & Annos)

West's Ann.Cal.Penal Code § 26545

§ 26545. Loan of firearm for shooting targets at a target facility; application of Section 26500

Effective: January 1, 2012

Currentness

Section 26500 does not apply to the loan of a firearm for the purposes of shooting at targets, if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

West's Ann. Cal. Penal Code § 26545, CA PENAL § 26545
Current with all laws through Ch. 372 of 2020 Reg.Sess.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
Penal Code (Refs & Annos)
Part 6. Control of Deadly Weapons (Refs & Annos)
Title 4. Firearms (Refs & Annos)
Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)
Article 1. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)

West's Ann.Cal.Penal Code § 27585

§ 27585. Importation, transportation or bringing of firearms into the
state; residents required to take delivery from a state dealer; exceptions

Effective: January 1, 2020

Currentness

(a) Commencing January 1, 2015, a resident of this state shall not import into this state, bring into this state, or transport into this state, any firearm that the person purchased or otherwise obtained on or after January 1, 2015, from outside of this state unless the person first has that firearm delivered to a dealer in this state for delivery to that resident pursuant to the procedures set forth in Section 27540 and Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2.

(b) Subdivision (a) does not apply to or affect any of the following:

(1) A licensed collector who is subject to and complies with Section 27565.

(2) A dealer, if the dealer is acting in the course and scope of their activities as a dealer.

(3) A wholesaler, if the wholesaler is acting in the course and scope of their activities as a wholesaler.

(4) A person licensed as an importer of firearms or ammunition or licensed as a manufacturer of firearms or ammunition, pursuant to Section 921 et seq. of Title 18 of the United States Code and the regulations issued pursuant thereto if the importer or manufacturer is acting in the course and scope of their activities as a licensed importer or manufacturer.

(5) A personal firearm importer who is subject to and complies with Section 27560.

(6) A person who complies with subdivision (b) of Section 27875.

(7) A person who complies with subdivision (b), (c), or (d) of Section 27920.

(8) A person who is on the centralized list of exempted federal firearms licensees pursuant to Section 28450 if that person is acting in the course and scope of their activities as a licensee.

(9) A firearm regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 acquired by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, if that person is acting within the course and scope of their activities as a licensee and in accordance with the terms and conditions of the permit.

(10) A firearm regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 acquired by a person who holds a permit issued pursuant to Section 31005, if that person is acting within the course and scope of their activities as a licensee and in accordance with the terms and conditions of the permit.

(11) A firearm regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 acquired by a person who holds a permit issued pursuant to Section 32650, if that person is acting within the course and scope of their activities as a licensee and in accordance with the terms and conditions of the permit.

(12) A firearm regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 acquired by a person who holds a permit issued pursuant to Section 33300, if that person is acting within the course and scope of their activities as a licensee and in accordance with the terms and conditions of the permit.

(13) The importation of a firearm into the state, bringing a firearm into the state, or transportation of a firearm into the state, that is regulated by any of the following statutes, if the acquisition of that firearm occurred outside of California and is conducted in accordance with the applicable provisions of the following statutes:

(A) Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, relating to destructive devices and explosives.

(B) Section 24410, relating to cane guns.

(C) Section 24510, relating to firearms that are not immediately recognizable as firearms.

(D) Sections 24610 and 24680, relating to undetectable firearms.

(E) Section 24710, relating to wallet guns.

(F) Chapter 2 (commencing with Section 30500) of Division 10, relating to assault weapons.

(G) Section 31500, relating to unconventional pistols.

(H) Sections 33215 to 33225, inclusive, relating to short-barreled rifles and short-barreled shotguns.

(I) Chapter 6 (commencing with Section 32610) of Division 10, relating to machineguns.

(J) Section 33600, relating to zip guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, as they relate to zip guns.

(14) The importation, transportation, or bringing of a firearm into the state by a person who meets any of the following criteria:

(A) The person is listed in the registry set forth in Section 11106 as the owner of the firearm.

(B) The person has been issued documentation by the Department of Justice pursuant to subdivision (b) of Section 11106 that indicates the person is listed in the centralized registry as owning that firearm.

(C) The person has a copy of a Dealer's Record of Sale that shows that the person received that firearm from the dealer listed in that Dealer's Record of Sale and is listed as the owner of the firearm.

(D) If the firearm is a handgun, the person has a license to carry that handgun pursuant to Chapter 4 (commencing with Section 26150) of Division 5 and the person is licensed to carry that handgun.

(15) A licensed common carrier or an authorized agent or employee of a licensed common carrier, when acting in the course and scope of duties incident to the delivery of or receipt of that firearm in accordance with federal law.

(c) The provisions of this section are cumulative and do not restrict the application of any other law. However, an act or omission punishable in different ways by this section and different provisions of this code shall not be punished under more than one provision.

**Credits**
(Added by Stats.2014, c. 878 (A.B.1609), § 4, eff. Jan. 1, 2015. Amended by Stats.2019, c. 730 (A.B.879), § 5, eff. Jan. 1, 2020.)

West's Ann. Cal. Penal Code § 27585, CA PENAL § 27585
Current with all laws through Ch. 372 of 2020 Reg.Sess.

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
          Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)
            Article 6. Exceptions to the Requirement of Using a Dealer for a Private Party Firearms
            Transaction (Refs & Annos)

West's Ann.Cal.Penal Code § 27880

§ 27880. Loan of firearm between spouses, registered domestic
partners, or other specified relations; application of Section 27545

Effective: January 1, 2017

Currentness

Section 27545 does not apply to the loan of a firearm if all of the following requirements are satisfied:

(a) The loan is to a spouse, registered domestic partner, or any of the following relations, whether by consanguinity, adoption, or steprelation:

(1) Parent.

(2) Child.

(3) Sibling.

(4) Grandparent.

(5) Grandchild.

(b) The loan is infrequent, as defined in Section 16730.

(c) The loan is for any lawful purpose.

(d) The loan does not exceed 30 days in duration.

(e) Until January 1, 2015, if the firearm is a handgun, the individual being loaned the firearm shall have a valid handgun safety certificate. Commencing January 1, 2015, for any firearm, the individual being loaned the firearm shall have a valid firearm safety certificate, except that in the case of a handgun, an unexpired handgun safety certificate may be used.

(f) If the firearm being loaned is a handgun, the handgun is registered to the person making the loan pursuant to Section 11106.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012. Amended by Stats.2011, c. 745 (A.B.809), § 41; Stats.2013, c. 761 (S.B.683), § 8; Stats.2016, c. 41 (A.B.1511), § 1, eff. Jan. 1, 2017.)

West's Ann. Cal. Penal Code § 27880, CA PENAL § 27880
Current with all laws through Ch. 372 of 2020 Reg.Sess.

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
          Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)
            Article 6. Exceptions to the Requirement of Using a Dealer for a Private Party Firearms Transaction (Refs & Annos)

West's Ann.Cal.Penal Code § 27885

§ 27885. Loan of firearm; application of Section 27545

Effective: January 1, 2012

Currentness

Section 27545 does not apply to the loan of a firearm if all of the following conditions exist:

(a) The person loaning the firearm is at all times within the presence of the person being loaned the firearm.

(b) The loan is for a lawful purpose.

(c) The loan does not exceed three days in duration.

(d) The individual receiving the firearm is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) The person loaning the firearm is 18 years of age or older.

(f) The person being loaned the firearm is 18 years of age or older.

**Credits**
(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

West's Ann. Cal. Penal Code § 27885, CA PENAL § 27885
Current with all laws through Ch. 372 of 2020 Reg.Sess.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
Penal Code (Refs & Annos)
Part 6. Control of Deadly Weapons (Refs & Annos)
Title 4. Firearms (Refs & Annos)
Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)
Article 6. Exceptions to the Requirement of Using a Dealer for a Private Party Firearms
Transaction (Refs & Annos)

West's Ann.Cal.Penal Code § 27881

§ 27881. Loan within lender's place of residence or other real property; application of Section 27545

Effective: January 1, 2020

Currentness

Section 27545 does not apply to the loan of a firearm if all of the following conditions are met:

(a) If the firearm being loaned is a handgun, the handgun is registered to the person making the loan pursuant to Section 11106.

(b) The loan occurs within the lender's place of residence or other real property, except for property that is zoned for commercial, retail, or industrial activity.

(c) The individual receiving the firearm is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(d) The individual receiving the firearm is 18 years of age or older.

(e) The firearm does not leave the real property upon which the loan occurs.

**Credits**

(Added by Stats.2019, c. 840 (S.B.172), § 10, eff. Jan. 1, 2020.)

West's Ann. Cal. Penal Code § 27881, CA PENAL § 27881
Current with all laws through Ch. 372 of 2020 Reg.Sess.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
          Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)
            Article 6. Exceptions to the Requirement of Using a Dealer for a Private Party Firearms
            Transaction (Refs & Annos)

West's Ann.Cal.Penal Code § 27950

§ 27950. Loan of firearm to licensed hunter during hunting season; application of Section 27545

Effective: January 1, 2012

Currentness

Section 27545 does not apply to the loan of a firearm, other than a handgun, to a licensed hunter for use by that hunter for a period of time not to exceed the duration of the hunting season for which the firearm is to be used.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

West's Ann. Cal. Penal Code § 27950, CA PENAL § 27950
Current with all laws through Ch. 372 of 2020 Reg.Sess.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 6. Sale, Lease, or Transfer of Firearms (Refs & Annos)
          Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms (Refs & Annos)
            Article 6. Exceptions to the Requirement of Using a Dealer for a Private Party Firearms
            Transaction (Refs & Annos)

West's Ann.Cal.Penal Code § 27910

§ 27910. Loan of firearm to person 18 years of age or older for
target shooting at target facility; application of Section 27545

Effective: January 1, 2012

Currentness

Section 27545 does not apply to the loan of a firearm to a person 18 years of age or older for the purposes of shooting at targets if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

West's Ann. Cal. Penal Code § 27910, CA PENAL § 27910
Current with all laws through Ch. 372 of 2020 Reg.Sess.

**End of Document**                                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 10. Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Refs & Annos)
          Chapter 4. Handguns and Firearm Safety (Refs & Annos)
            Article 3. Exceptions to Firearm Safety Certificate Requirement (Refs & Annos)

West's Ann.Cal.Penal Code § 31700

§ 31700. Persons exempt

Effective: January 1, 2020
Currentness

(a) The following persons, properly identified, are exempted from the firearm safety certificate requirement in subdivision (a) of Section 31615:

(1) Any active or honorably retired peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

(2) Any active or honorably retired federal officer or law enforcement agent.

(3) Any reserve peace officer, as defined in Section 832.6.

(4) Any person who has successfully completed the course of training specified in Section 832.

(5) A firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, who is acting in the course and scope of that person's activities as a person licensed pursuant to Sections 26700 to 26915, inclusive.

(6) A federally licensed collector who is acquiring or being loaned a firearm that is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, who has a current certificate of eligibility issued by the department pursuant to Section 26710.

(7) Except as provided in subdivision (d), a person to whom a firearm is being returned, where the person receiving the firearm is the owner of the firearm.

(8) A family member of a peace officer or deputy sheriff from a local agency who receives a firearm pursuant to Section 50081 of the Government Code.

(9) Any individual who has a valid concealed weapons permit issued pursuant to Chapter 4 (commencing with Section 26150) of Division 5.

(10) An active or honorably retired member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States, where individuals in those organizations are properly identified. For purposes of this section, proper identification includes the Armed Forces Identification Card or other written documentation certifying that the individual is an active or honorably retired member.

(11) Any person who is authorized to carry loaded firearms pursuant to Section 26025 or 26030.

(12) Persons who are the holders of a special weapons permit issued by the department pursuant to Section 32650 or 33300, pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of this division.

(b) The following persons who take title or possession of a firearm by operation of law in a representative capacity, until or unless they transfer title ownership of the firearm to themselves in a personal capacity, are exempted from the firearm safety certificate requirement in subdivision (a) of Section 31615:

(1) The executor, personal representative, or administrator of an estate.

(2) A secured creditor or an agent or employee thereof when the firearms are possessed as collateral for, or as a result of, a default under a security agreement under the Commercial Code.

(3) A levying officer, as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure.

(4) A receiver performing the functions of a receiver.

(5) A trustee in bankruptcy performing the duties of a trustee.

(6) An assignee for the benefit of creditors performing the functions of an assignee.

(7) The trustee of a trust that includes a firearm and that was part of a will that created the trust.

(8) A person acting pursuant to the person's power of attorney in accordance with Division 4.5 (commencing with Section 4000) of the Probate Code.

(9) A limited or general conservator appointed by a court pursuant to the Probate Code or Welfare and Institutions Code.

(10) A guardian ad litem appointed by a court pursuant to Section 372 of the Code of Civil Procedure.

(11) The trustee of a trust that includes a firearm that is under court supervision.

(12) A special administrator appointed by a court pursuant to Section 8540 of the Probate Code.

(13) A guardian appointed by a court pursuant to Section 1500 of the Probate Code.

(c) A person, validly identified, who has been issued a valid hunting license that is unexpired or that was issued for the hunting season immediately preceding the calendar year in which the person takes title or possession of a firearm is exempt from the firearm safety certificate requirement in subdivision (a) of Section 31615, except as to handguns.

(d) A person who takes possession of a firearm and complies with Section 27922 by delivering the firearm to a law enforcement agency is exempted from the firearm safety certificate requirement in subdivision (a) of Section 31615. The exemption set forth in paragraph (7) of subdivision (a) shall not apply to the return of that firearm to that person, if the person has requested the firearm and is eligible to receive it.

(e) The firearm safety certificate requirement in subdivision (a) of Section 31615 shall not apply to a person taking possession of a firearm pursuant to Section 27882 or 27883.

**Credits**
(Added by Stats.2013, c. 761 (S.B.683), § 37, operative Jan. 1, 2015. Amended by Stats.2018, c. 185 (A.B.2176), § 10, eff. Jan. 1, 2019; Stats.2019, c. 110 (A.B.1292), § 10, eff. Jan. 1, 2020; Stats.2019, c. 840 (S.B.172), § 14.5, eff. Jan. 1, 2020.)

West's Ann. Cal. Penal Code § 31700, CA PENAL § 31700
Current with all laws through Ch. 372 of 2020 Reg.Sess.

End of Document    © 2021 Thomson Reuters. No claim to original U.S. Government Works.