No. 20-56174

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATTHEW JONES, et al.,

Plaintiffs-Appellants,

v.

XAVIER BECERRA, in his official capacity as
Attorney General of the State of California, et al.,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Southern District of California

No. 3:19-cv-01226-L-AHG
The Honorable M. James Lorenz

# BRIEF OF AMICI CURIAE ILLINOIS, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, VIRGINIA, AND WASHINGTON IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

SARAH A. HUNGER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202
shunger@atg.state.il.us

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES.................................. 1

SUMMARY OF ARGUMENT.................................................................. 3

ARGUMENT............................................................................................. 5

I.   The Second Amendment Preserves State Authority To Enact
     Age-Based Regulations On Access To Firearms............................. 5

     A.   The Second Amendment allows States to enact varied
          measures to promote gun safety and protect against gun
          violence. ................................................................................ 5

     B.   California's age-based regulations, which protect the public
          health and safety, are consistent with measures taken by
          other States and upheld by courts across the country......... 11

II.  California Has Demonstrated That Its Age-Based Regulations
     Promote Public Safety And Prevent Gun Violence. ...................... 18

CONCLUSION. ...................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*City of Renton v. Playtime Theatres, Inc.,*
  475 U.S. 41 (1986) ................................................................ 23

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ............................................................... 7

*Friedman v. City of Highland Park,*
  784 F.3d 406 (7th Cir. 2015) ........................................... 8, 10

*Fyock v. City of Sunnyvale,*
  779 F.3d 991 (9th Cir. 2015) ...................................... 1, 20, 23

*Heller v. District of Columbia,*
  670 F.3d 1244 (D.C. Cir. 2011) ...................................... 11, 12

*Horsley v. Trame,*
  808 F.3d 1126 (7th Cir. 2015) ........................................ 17, 24

*In re Jordan G.,*
  33 N.E.3d 162 (Ill. 2015) ..................................................... 17

*Jackson v. City and Cty. of San Francisco,*
  746 F.3d 953 (9th Cir. 2014) ............................... 9, 20, 21, 23

*Kolbe v. Hogan,*
  849 F.3d 114 (4th Cir. 2017) ............................... 7, 10, 11, 22

*Mahoney v. Sessions,*
  871 F.3d 873 (9th Cir. 2018) ............................................... 20

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) ..................................................... 7, 8, 21

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470 (1996) ............................................................... 6

*Minority Television Project, Inc. v. FCC,*
  736 F.3d 1192 (9th Cir. 2013) .............................................. 22

*Mitchell v. Atkins*, --- F. Supp.3d ----,
No. C19-5106, 2020 WL 5106723 (W.D. Wash. Aug. 31, 2020) ......... 16

*Nat'l Rifle Ass'n v. BATFE*,
700 F.3d 185 (5th Cir. 2012) ........................................................ 18, 25

*Nat'l Rifle Ass'n v. McCraw*,
719 F.3d 338 (5th Cir. 2013) .................................................. 17, 18, 25

*Pena v. Lindley*,
898 F.3d 969 (9th Cir. 2018) .................................................... 9, 20, 22

*Peruta v. Cnty. of San Diego*,
824 F.3d 919 (9th Cir. 2016) .......................................................... 7, 9

*Powell v. Tompkins*,
783 F.3d 332 (1st Cir. 2015) ............................................................ 18

*Silvester v. Harris*,
843 F.3d 816 (9th Cir. 2016) ...................................................... 20, 21

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) ........................................................................ 22

*United States v. Lopez*,
514 U.S. 549 (1995) .......................................................................... 5

*United States v. Morrison*,
529 U.S. 598 (2000) .......................................................................... 6

**Statutes**

Ala. Code § 13A-11-57 ...................................................................... 15

Alaska Stat. § 11.61.210(a)(6) ..................................................... 14, 15

Ariz. Rev. Stat. § 13-3109(A) ........................................................ 14, 15

Ark. Code Ann. § 5-73-109(a) ....................................................... 14, 15

Cal. Penal Code § 27505(a) ............................................................. 14

Cal. Penal Code § 27510 .............................................................. 3, 13

Conn. Gen. Stat. § 29-34(b) ...................................................... 14

Conn. Gen. Stat. § 29-36f ......................................................... 16

Conn. Gen. Stat. § 29-37a ......................................................... 14

D.C. Code Ann. § 7-2502.03 ...................................................... 16

D.C. Code Ann. § 7-2507.06 ...................................................... 14

D.C. Code Ann. § 22-4507 ......................................................... 14

Del. Code Ann. tit. 11, § 1445 .................................................. 14

Del. Code Ann. tit. 24, § 903 .................................................... 14

Fla. Stat. § 790.065(13) ..................................................... 13, 14

Haw. Rev. Stat. Ann. § 134-2 .............................................. 13, 16

Haw. Rev. Stat. Ann. § 134-4 .................................................. 16

Haw. Rev. Stat. Ann. § 134-5 .................................................. 16

Idaho Code Ann. § 18-3302A ..................................................... 14

430 Ill. Comp. Stat. 65/2(a)(1) ................................................ 16

430 Ill. Comp. Stat. 65/3(a) ............................................... 13, 14

430 Ill. Comp. Stat. 65/4 .............................................. 13, 14, 16

Ind. Code Ann. § 35-47-2-3 ....................................................... 15

Iowa Code § 724.22 ........................................................... 14, 16

Ky. Rev. Stat. Ann. § 527.110(1)(a) .......................................... 15

La. Rev. Stat. Ann. § 14:91 ................................................ 14, 15

Mass. Gen. Laws ch. 140, § 130 ............................................... 14

Mass. Gen. Laws ch. 140, § 131 ............................................... 16

iv

Mass. Gen. Laws ch. 140, § 131E ........................................ 14

Md. Code Ann., Pub. Safety § 5-101(r) ............................... 16

Md. Code Ann., Pub. Safety § 5-133(d).............................. 16

Md. Code Ann., Pub. Safety § 5-134 ................................... 14

Me. Rev. Stat. tit. 17-A, § 554-A ....................................... 14

Me. Rev. Stat. tit. 17-A, § 554-B ....................................... 15

Mich. Comp. Laws § 28.422(3)(b) ...................................... 14

Mich. Comp. Laws § 28.422(12) ......................................... 14

Mich. Comp. Laws § 750.223(2) ......................................... 14

Minn. Stat. § 609.66 .......................................................... 14

Miss. Code Ann. § 97-37-13.......................................... 14, 15

Mo. Rev. Stat. § 571.060.1(2) ....................................... 14, 15

Mo. Rev. Stat. § 571.080.................................................... 15

N.C. Gen. Stat. § 14-315 .................................................... 15

Neb. Rev. Stat. § 28-1204.01 ............................................. 15

Neb. Rev. Stat. § 69-2403 .................................................. 14

Neb. Rev. Stat. § 69-2404 .................................................. 14

N.H. Rev. Stat. Ann. § 159:12 ............................................ 15

N.J. Stat. Ann. § 2C:39-10e................................................ 15

N.J. Stat. Ann. § 2C:58-3c(4) ....................................... 14, 15

N.J. Stat. Ann. § 2C:58-3.3(c) ........................................... 14

N.J. Stat. Ann. § 2C:58-6.1 .......................................... 15, 16

N.Y. Penal Law § 400.00(1)(a) ........................................................ 14, 16

N.Y. Penal Law § 400.00(12) ................................................................. 14

Ohio Rev. Code Ann. § 2923.21 ...................................................... 14, 15

Okla. Stat. Ann. tit. 21, § 1273(A), (E) ................................................... 15

Or. Rev. Stat. § 166.470(1)(a) ................................................................ 15

18 Pa. Cons. Stat. Ann. § 6110.1(c), (d) ................................................ 15

18 Pa. Cons. Stat. Ann. § 6302 .............................................................. 15

R.I. Gen. Laws § 11-47-30 ...................................................................... 15

R.I. Gen. Laws § 11-47-31 ...................................................................... 15

R.I. Gen. Laws § 11-47-35(a)(1) ............................................................. 14

R.I. Gen. Laws § 11-47-37 ...................................................................... 14

S.C. Code Ann. § 16-23-30(A)(3) ............................................................ 15

Tenn. Code Ann. § 39-17-1303(a)(1) ...................................................... 15

Tenn. Code Ann. § 39-17-1320(a) ........................................................... 15

Tex. Penal Code Ann. § 46.06(a)(2), (c) ................................................. 15

Va. Code Ann. § 18.2-309 ....................................................................... 15

Vt. Stat. Ann. tit. 13, § 4020 ....................................................... 13, 14, 15

Wash. Rev. Code Ann. § 9.41.240 ............................................... 13, 14, 16

Wis. Stat. § 948.60(2)(b) ........................................................................ 15

Wyo. Stat. § 6-8-404(d)(i) ............................................................... 14, 15

**Other Authorities**

FBI, *Murder: Crime in the United States 2018, tbl. 20* ........................... 9

FBI, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017)......................................................................... 8

Giffords Law Center, Minimum Age to Purchase and Possess........ 12, 16

S.B. 61 (Cal. 2019) ...................................................................... 3

S.B. 1100 (Cal. 2017) ................................................................... 3

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, Connecticut, Delaware, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, and the District of Columbia submit this brief in support of Defendants-Appellees California Attorney General Xavier Becerra and Director of the California Department of Justice Bureau of Firearms Luis Lopez ("California") pursuant to Federal Rule of Appellate Procedure 29(a)(2). The amici States have a substantial interest in the public health, safety, and welfare, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Fyock v. City of Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015) ("self-evident" that "promoting public safety and reducing violent crime are substantial and important government interests") (internal quotations omitted).

To serve that compelling interest, States have long exercised their governmental prerogative to implement measures that regulate the sale and use of, and access to, firearms for individuals under the age of 21. Although the amici States have reached different conclusions on how

1

best to regulate in this area, they share an interest in protecting their right to address the problem of gun violence in a way that is tailored to the specific circumstances in each of their States. Enjoining California's sensible regulation of the sale of long guns and semi-automatic centerfire rifles to individuals under the age of 21 would interfere with this interest. Accordingly, the amici States urge this Court to affirm the district court's denial of preliminary injunctive relief.

## SUMMARY OF ARGUMENT

California recently enacted two measures amending California Penal Code § 27510—which regulates the sale and transfer of firearms by federally licensed firearms dealers to individuals under the age of 21—to further promote public safety and reduce gun violence by ensuring that only those young adults who complete adequate safety training are able to purchase long guns and semi-automatic centerfire rifles. The first measure, Senate Bill 1100, prohibits the sale or transfer of long guns by federally licensed firearms dealers to any person under 21, unless he or she has a valid hunting license, is an active or honorably discharged member of the Armed Forces, or is authorized to carry a firearm in the course and scope of employment as a member of law enforcement. *See* Cal. Penal Code § 27510(b)(1)-(3); S.B. 1100 (Cal. 2017). The second measure, Senate Bill 61, prohibits the sale or transfer of semi-automatic centerfire rifles by federally licensed firearms dealers to any person under 21, unless he or she is an active member of the Armed Forces or is authorized to carry a firearm in the course and scope of employment as a member of law enforcement. *See* Cal. Penal Code § 27510(b)(3); S.B. 61 (Cal. 2019).

Plaintiffs challenge section 27510, as amended by SB1100 and SB61, claiming that it unduly infringes upon the Second Amendment rights of individuals aged 18-20. But as the district court correctly concluded, laws regulating the sale of firearms to young adults are longstanding and presumptively lawful. Doc. 66 at 10. In any event, SB1100 and SB61 would not violate the Second Amendment because they do not impose a blanket prohibition on the sale or transfer of firearms to young adults and because regulations imposing age-based restrictions on the sale of long guns and semi-automatic centerfire rifles are reasonably related to California's interests in public safety and preventing gun violence, including mass shootings. *Id.* at 13, 17.

As the amici States explain, the Second Amendment reserves to the States the ability to exercise their police powers by enacting sensible and varied regulations designed to protect the public. In fact, all States and the District of Columbia impose age-based regulations on the sale and use of, and access to, firearms within their borders. Although these regulations differ based on each jurisdiction's needs, 17 States and the District of Columbia have a minimum age requirement of 21 for the sale or possession of certain categories of firearms.

Furthermore, the evidence presented by California—which included legislative findings, social science research, and statistical analyses—demonstrated that the measures enacted by SB1100 and SB61 are reasonably related to its state interests. Plaintiffs' arguments to the contrary are based on an unduly heightened burden that, if applied, would restrict the States' ability to devise local solutions to difficult and evolving problems. For these reasons, and those articulated by California, this Court should affirm the decision of the district court.

## ARGUMENT

### I. The Second Amendment Preserves State Authority To Enact Age-Based Regulations On Access To Firearms.

#### A. The Second Amendment allows States to enact varied measures to promote gun safety and protect against gun violence.

The amici States have long exercised their police power to protect the health, safety, and welfare of their residents. In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotations omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all

persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotations omitted). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

In the amici States' experience, such measures are more effective when tailored to the individual needs of each State. The determination made by California here—that regulating young-adult access to long guns and semi-automatic centerfire rifles was necessary to promote public safety and prevent crime within its borders—fits comfortably within both the States' longstanding police power and the bounds of the Second Amendment.

Indeed, as Judge Wilkinson explained in a case addressing Maryland's ban on assault weapons and large-capacity magazines, the Supreme Court's establishment of "the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home,'" did not "abrogate"

the States' "core responsibility" of "[p]roviding for the safety of citizens within their borders." *Kolbe v. Hogan*, 849 F.3d 114, 160 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). On the contrary, the Court in *Heller*—and then again in *McDonald v. City of Chicago*, 561 U.S. 742 (2010)—expressly acknowledged the important role that States play in protecting their residents from the harms of gun violence.

To begin, *Heller* made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 595; *see also McDonald*, 561 U.S. at 802 ("No fundamental right—not even the First Amendment—is absolute."). Although government entities may not ban handgun possession by responsible, law-abiding individuals in the home, States still possess "a variety of tools" to combat the problem of gun violence via regulation. *Heller*, 554 U.S. at 636. The States may, for example, implement measures prohibiting certain groups of individuals from possessing firearms, such as "felons and the mentally ill," or "imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27; *see also Peruta v. Cnty. of San Diego*, 824 F.3d 919, 928 (9th Cir. 2016) (en banc) (noting that the *Heller* Court

"emphasized the limited scope of its holding, and underscored the tools that remained available to the District of Columbia to regulate firearms").

In *McDonald*, the Court reiterated that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785. Rather, it recognized "that conditions and problems differ from locality to locality." *Id.* at 783; *see also Friedman v. City of Highland Park*, 784 F.3d 406, 412 (7th Cir. 2015) ("the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity").

Indeed, according to the Federal Bureau of Investigation, a wide variety of factors "affect the volume and type of crime occurring from place to place," including population density, variations in the youth concentration in the composition of the population, poverty level, job availability, modes of transportation, climate, criminal justice system policies, and educational and recreational characteristics.[1]  These

---

[1]  FBI, *Uniform Crime Reporting Statistics:  Their Proper Use* (May 2017), https://ucr.fbi.gov/ucr-statistics-their-proper-use.  All websites were last visited on January 25, 2021.

factors, which vary from State to State, produce disparities in the number and characteristics of firearm-related murders and other crimes.[2]  Given these unique conditions and needs, States must be able to implement varied measures to address gun violence and protect the health and safety of their residents, as both *Heller* and *McDonald* acknowledged.

Applying these principles, this Court recently approved California's "decision to require new semiautomatic gun models manufactured in-state to incorporate new technology" because "the state must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems."  *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018) (cleaned up); *see also Peruta*, 824 F.3d at 945 (Graber, J., concurring) (explaining that "the government must be allowed to experiment with solutions to serious problems") (citing *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 966 (9th Cir. 2014)).

---

[2]  *See, e.g.*, FBI, *Murder:  Crime in the United States 2018, tbl. 20*, https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/table-20.

Other circuits, too, have applied these principles to confirm the constitutionality of state (and local) regulations. In *Friedman*, for instance, the Seventh Circuit upheld a local government's ban on assault weapons and large-capacity magazines, noting that although "*Heller* and *McDonald* set limits on the regulation of firearms," they did not "take all questions about which weapons are appropriate for self-defense out of the people's hands." 784 F.3d at 412. As the court explained, "the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity." *Id.*

Likewise, in *Kolbe*, the Fourth Circuit rejected a challenge to Maryland's ban on assault weapons and large-capacity magazines. 849 F.3d at 121. In concurrence, Judge Wilkinson highlighted the need for courts to refrain from relying on *Heller*'s handgun exemption to "disable[ ] legislatures from addressing the wholly separate subject of assault weapons suitable for use by military forces around the globe." *Id.* at 150 (Wilkinson, J., concurring). In other words, he did not draw from *Heller* or "the profound ambiguities of the Second Amendment an invitation to courts to preempt this most volatile of political subjects

10

and arrogate to themselves decisions that have been historically assigned to other, more democratic, actors." *Id.*

This Court should apply these same principles—which build on the States' responsibility to protect the health and safety of their residents and their ability to utilize innovative measures when doing so—to the age restrictions at issue in this case.

**B. California's age-based regulations, which protect the public health and safety, are consistent with measures taken by other States and upheld by courts across the country.**

California's decision to regulate the sale of long guns and semi-automatic centerfire rifles to young adults is well within the parameters just discussed. As California explains, SB1100 and SB61 were enacted to promote public safety and reduce gun violence, including in the context of mass shootings, by ensuring that only those young adults who complete adequate safety training are able to purchase long guns and semi-automatic centerfire rifles from federally licensed firearms dealers. Cal. Br. 1-2.

Furthermore, the regulatory mechanisms chosen by California to achieve its public safety goals are consistent with those implemented across the country and upheld by the courts. *See, e.g., Heller v. District*

*of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) (assuming that

handgun registration requirement "does not impinge upon the right

protected by the Second Amendment" because that requirement is

"longstanding in American law, accepted for a century in diverse states

and cities and now applicable to more than one fourth of the Nation by

population").  Although States have reached different conclusions on

how best to regulate the sale and use of, and access to, firearms—as

they are permitted to do, *see supra* Section I.A.—all 50 States and the

District of Columbia have determined that imposing age-based

restrictions on the sale or use of firearms is necessary to promote public

safety and curb gun violence within their borders.[3]

More specifically, many States have imposed very similar age-

based restrictions to those enacted by California in SB1100 and SB61.

Seventeen States and the District of Columbia regulate the sale of

firearms to those under 21.  Of those, California, Florida, Hawaii,

Illinois, and Vermont generally prohibit the sale of long guns, including

---

[3] Giffords Law Center, Minimum Age to Purchase and Possess,
https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-
gun/minimum-age/ (collecting state laws that impose a minimum age
for purchasing and/or possessing handguns and/or long guns).

semi-automatic centerfire rifles, to minors and young adults aged 18-20.[4]  Washington has made a similar choice, too, by prohibiting the sale or transfer of semiautomatic assault rifles to those under 21.[5]

Some of these regulations, moreover, contain fewer exceptions than those enumerated in SB1100 and SB61.  Florida, for example, prohibits the sale of firearms to persons under 21, except for rifles or shotguns sold to law enforcement officers, correctional officers, and servicemembers.[6]  In Washington, there are no exceptions to the sale of semiautomatic assault rifles to persons under 21.[7]

Setting a minimum age of 21 is also common in the related context of handgun sales; indeed, 17 States—California, Connecticut, Delaware, Florida, Illinois, Iowa, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington, and Wyoming—and the District of Columbia all prohibit the sale of

---

[4]  Cal. Penal Code § 27510; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill. Comp. Stat. 65/3(a), 65/4; 13 Vt. Stat. Ann. § 4020.

[5]  Wash. Rev. Code Ann. § 9.41.240.

[6]  Fla. Stat. § 790.065(13).

[7]  Wash. Rev. Code Ann. § 9.41.240.

handguns to persons under 21.[8]  As with long gun regulations, some of these statutes contain exceptions to the age restrictions—such as for officers, servicemembers, and honorably discharged servicemembers—whereas others contain none.[9]

Other States, however, have determined that a minimum age requirement of 18 best suits their needs.  For instance, 27 States and the District of Columbia prohibit the sale of long guns to individuals under 18, subject to exceptions in certain jurisdictions.[10]  Similarly, 21

---

[8]  Cal. Penal Code § 27505(a); Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); 430 Ill. Comp. Stat. 65/3(a), 65/4; Iowa Code § 724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3.3c, 6.1a, 3c(4); N.Y. Penal Law § 400.00(1)(a), (12); Ohio Rev. Code Ann. § 2923.21(B); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240; Wyo. Stat. § 6-8-404(d)(i)(A).

[9]  *Compare, e.g.*, Iowa Code § 724.22(2); N.Y. Penal Law § 400.00(1)(a); Ohio Rev. Code Ann. § 2923.21(B); Vt. Stat. Ann. tit. 13, § 4020, *with* Conn. Gen. Stat. § 29-34(b); Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Wyo. Stat. § 6-8-404(d)(i)(A).

[10]  Alaska Stat. § 11.61.210(a)(6); Ariz. Rev. Stat. § 13-3109(A); Ark. Code Ann. § 5-73-109(a); Conn. Gen. Stat. § 29-37a(b), (c); D.C. Code Ann. § 7-2507.06(a)(1); Del. Code Ann. tit. 11, § 1445; Idaho Code Ann. § 18-3302A; Iowa Code § 724.22(1); La. Rev. Stat. Ann. § 14:91; Mass. Gen. Laws ch. 140, §§ 130, 131E(a); Me. Rev. Stat. Ann. 17-A, § 554-A; Md. Code Ann., Pub. Safety § 5-134(d)(1)(ii); Mich. Comp. Laws Serv. § 750.223(2); Minn. Stat. § 609.66; Miss. Code Ann. § 97-37-13; Mo. Rev.

States have imposed varied restriction on the sale of handguns to those under 18.[11]

Finally, many States have employed minimum age restrictions when regulating the possession of firearms. As with the sale of firearms, these regulatory schemes vary by State, although nine States and the District of Columbia have set a minimum age of 21 to possess firearms, subject to certain exceptions. Specifically, Connecticut, the District of Columbia, Hawaii, Illinois, Iowa, Maryland, Massachusetts, New Jersey, New York, and Washington restrict possession of

_____

Stat. § 571.060.1(2) (applies to reckless sales to a minor); Neb. Rev. Stat. § 28-1204.01; N.J. Stat. Ann. §§ 2C:39-10e, 2C:58-6.1a, 2C:58-3c(4); Ohio Rev. Code Ann. § 2923.21(A); Okla. Stat. Ann. tit. 21, § 1273(A), (E); Or. Rev. Stat. § 166.470(1)(a); 18 Pa. Cons. Stat. Ann. §§ 6110.1(c), (d), 6302; R.I. Gen. Laws §§ 11-47-30, 11-47-31; Tenn. Code Ann. § 39-17-1303(a)(1); Tex. Penal Code Ann. § 46.06(a)(2), (c); Vt. Stat. Ann. tit. 13, § 4020; Wis. Stat. § 948.60(2)(b); Wyo. Stat. § 6-8-404(d)(i)(B).

[11] Ala. Code § 13A-11-57; Alaska Stat. § 11.61.210(a)(6); Ariz. Rev. Stat. § 13-3109(A); Ark. Code Ann. § 5-73-109(a); Ind. Code Ann. § 35-47-2-3; Ky. Rev. Stat. Ann. § 527.110(1)(a); La. Rev. Stat. Ann. § 14:91; Me. Rev. Stat. Ann. tit. 17-A, § 554-B; Miss. Code Ann. § 97-37-13; Mo. Rev. Stat. § 571.080; N.C. Gen. Stat. § 14-315; N.H. Rev. Stat. Ann. § 159:12; Okla. Stat. Ann. tit. 21, § 1273(A), (E); Or. Rev. Stat. § 166.470(1)(a); 18 Pa. Cons. Stat. Ann. §§ 6110.1(c), (d), 6302; S.C. Code Ann. § 16-23-30(A)(3); Tenn. Code Ann. §§ 39-17-1303(a)(1), 39-17-1320(a); Tex. Penal Code Ann. § 46.06(a)(2), (c); Vt. Stat. Ann. tit. 13, § 4020; Va. Code Ann. § 18.2-309; Wis. Stat. § 948.60(2)(b).

handguns for those under 21, subject to exceptions in certain jurisdictions.[12]  Hawaii, Illinois, and the District of Columbia extend those age restrictions to the possession of long guns, subject to certain exceptions, whereas Maryland and Washington prohibit the possession of assault weapons and semi-automatic rifles, respectively, to those under 21.[13]  Numerous additional States, too, have imposed a minimum age of 18 on the possession of handguns or long guns, and select others have set 16, 17, or 19 as the minimum age.[14]

Notably, courts across the country have upheld age-based regulations enacted by States under their police power.  *See, e.g.*, Cal. Br. 22-26; *Mitchell v. Atkins*, --- F. Supp.3d ----, No. C19-5106, 2020 WL 5106723, at **4, 7 (W.D. Wash. Aug. 31, 2020) (collecting cases and

---

[12]  Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Haw. Rev. Stat. Ann. §§ 134-2(a), 134-2(d), 134-4(b), 134-5(b); 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2)(i); Iowa Code § 724.22; Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann. § 2C:58-6.1b; N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann. § 9.41.240.

[13]  *Compare* D.C. Code Ann. § 7-2502.03; Haw. Rev. Stat. Ann. §§ 134-2(a), 134-2(d), 134-4, 134-5; 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2)(i), *with* Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Wash. Rev. Code Ann. § 9.41.240.

[14]  Giffords Law Center, *supra* note 3.

upholding constitutionality of a state initiative regulating the sale and possession of semiautomatic assault rifles for individuals under 21). As one example, both federal and state courts have affirmed the constitutionality of an Illinois statutory scheme that requires parental consent for individuals under 21 to obtain a license to possess firearms. *See, e.g.*, *Horsley v. Trame*, 808 F.3d 1126, 1134 (7th Cir. 2015) (upholding parental consent requirement for young adults between the ages of 18 and 20); *In re Jordan G.*, 33 N.E.3d 162, 168-69 (Ill. 2015) (upholding portions of aggravated unlawful use of a weapon statute that apply to persons under the age of 21 without the requisite license). Illinois enacted these measures, the Seventh Circuit explained, to promote its longstanding interest in public safety and, more specifically, in protecting residents from firearms violence. *Horsley*, 808 F.3d at 1132.

The Fifth Circuit has similarly rejected a constitutional challenge to Texas statutes that prohibit persons aged 18 to 20 from carrying handguns in public. *Nat'l Rifle Ass'n v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013). In reaching this conclusion, the court relied on a decision upholding the federal ban on commercial handgun sales to individuals

under 21, noting that the goal of both regulations was to restrict the use of and access to firearms by young adults to deter crime and promote public safety. *Id.* (citing *Nat'l Rifle Ass'n v. BATFE*, 700 F.3d 185 (5th Cir. 2012)); *see also Powell v. Tompkins*, 783 F.3d 332, 349 (1st Cir. 2015) (upholding a decision rejecting Second Amendment challenge to Massachusetts minimum age requirement for public carriage).

In short, California's decision to implement age-based restrictions on the sale of long guns and semi-automatic centerfire rifles does not make it an outlier, nor place it outside of the constitutional range. In implementing this policy, California has taken into account the specific needs of its residents without imposing any restrictions that are inconsistent with those in other jurisdictions.

## II. California Has Demonstrated That Its Age-Based Regulations Promote Public Safety And Prevent Gun Violence.

In addition to being consistent with regulations imposed by numerous other States, and upheld by the courts, SB1100 and SB61 are reasonably related to California's compelling interests in promoting public safety and preventing gun violence, as the district court correctly concluded. Although these measures are presumptively lawful

regulations that do not impose a blanket prohibition on a core Second Amendment right, plaintiffs contend that this Court should apply strict scrutiny.  Pl. Br. 35-39.  This argument should be rejected for all of the reasons explained by California.  Cal. Br. 21-32.  Plaintiffs also claim, however, that California has not satisfied intermediate scrutiny because, among other reasons, its evidence does not show that SB1100 and SB61 "directly and materially" advance the articulated state interests.  Pl. Br. 40 (internal quotations omitted).  According to plaintiffs, the evidence presented by California is insufficient because it does not separately address the specific age group at issue here:  young adults between the ages of 18 to 20.  *Id.*  As one example, plaintiffs dispute the relevance of the social science research on brain development and impulse control because, plaintiffs contend, those studies do not differentiate between 18-to-20-year olds and those 21 and over.  *Id.* at 40, 44-45.

Plaintiffs are incorrect for several reasons.  At the threshold, plaintiffs' argument relies on a misunderstanding of the State's burden under intermediate scrutiny.  It is well-established that intermediate scrutiny does not demand a showing that the regulation at issue "is the

least restrictive means of achieving its interest." *Fyock*, 779 F.3d at 1000; *see also Jackson*, 746 F.3d at 966 ("Intermediate scrutiny does not require that section 4512 be the *least* restrictive means of reducing handgun-related deaths."). Instead, States are "required to show only that [the regulation] promotes a substantial government interest that would be achieved less effectively absent the regulation." *Fyock*, 779 F.3d at 1000 (internal citations omitted); *see also Pena*, 898 F.3d at 979 (courts do not "impose an 'unnecessarily rigid burden of proof'" on a State's justifications for its firearms regulations) (quoting *Mahoney v. Sessions*, 871 F.3d 873, 881 (9th Cir. 2018)).

Nor is the State required to present evidence that isolates the particular group being regulated, as plaintiffs suggest. Pl. Br. 40-41. In fact, this Court rejected a nearly identical argument in *Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016), a case addressing the constitutionality of cooling-off periods for persons who had previously purchased a firearm. There, the plaintiffs argued that the State failed to satisfy intermediate scrutiny because the studies it presented on prevention of suicide "did not focus on subsequent purchasers." *Id.* at 828. This Court disagreed, noting that the studies "related to all

purchasers" and "confirm[ed] the common sense understanding that urges to commit violent acts or self harm may dissipate after there has been an opportunity to calm down." *Id.*; *see also Jackson*, 746 F.3d at 966 (explaining that "[i]n considering the question of fit," courts review the evidence presented, "giving the city a reasonable opportunity to experiment with solutions to admittedly serious problems") (internal quotations omitted).

This approach to intermediate scrutiny makes sense as a practical matter. Indeed, requiring States to present the sort of granular evidence plaintiffs urge would place them in the difficult position of showing that a yet-to-be-enacted measure would definitively resolve the problem that the legislature seeks to address. In other words, States would be rendered unable to innovate, or even tweak past legislative models, when faced with difficult and evolving problems like gun violence and mass shootings. Such a rule would thus directly interfere with the States' right to exercise their police power "to devise solutions to social problems that suit local needs and values." *McDonald*, 561 U.S. at 785. As discussed, *see supra* Section I.A., retaining state

variation on measures addressing gun violence was a central component of *Heller* and *McDonald*.

Moreover, imposing such a requirement would nullify state legislatures' ability to make predictive judgments, which are an important component of lawmaking. In fact, courts have held that they "must accord substantial deference to the predictive judgments of the legislature." *Kolbe*, 849 F.3d at 140 (cleaned up) (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994)). Whereas the legislature is responsible for "weigh[ing] conflicting evidence and mak[ing] policy judgments," the courts' "obligation is simply 'to assure that, in formulating its judgments, the legislature has drawn reasonable inferences based on substantial evidence.'" *Id.* (cleaned up) (quoting *Turner*, 512 U.S. at 666); *see also Pena*, 898 F.3d at 979 ("legislatures are 'not obligated, when enacting their statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review'") (quoting *Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1199 (9th Cir. 2013)) (alterations omitted).

When the correct legal and evidentiary framework is applied, California has presented evidence that is more than sufficient to meet

its burden. To satisfy intermediate scrutiny, States are "entitled to rely on any evidence 'reasonably believed to be relevant' to substantiate [their] important interests." *Fyock*, 779 F.3d at 1000 (quoting *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 52 (1986)). This evidence may include "the legislative history of the enactment as well as studies in the record or cited in pertinent case law." *Jackson*, 746 F.3d at 966 (internal quotations omitted). Here, California set forth ample evidence from each of those categories, including legislative history, statistical analyses, and social science evidence. Doc. 25 at 14-26.

That evidence, moreover, demonstrates that SB1100 and SB61, which limit firearm sales to young adults who have sufficient safety training, are related to California' interests in public safety and crime prevention, especially with respect to mass shootings. As California explains, it demonstrated through legislative history and recent statistics that young adults between the ages of 18 and 20 "commit a disproportionately large number of violent crimes" and that during those years, "arrests for homicide, rape, and robbery were their highest," Doc. 25 at 15. With respect to mass shootings in particular,

California set forth evidence that it had experienced increasingly frequent and deadly mass shootings, that the "vast majority of guns used in mass shootings are procured from dealers or other legal sources," and that a significant proportion of those shootings were committed by "youth aged 16-20." *Id.* at 23-24.

Additionally, California cited social science evidence that a young adult's brain development and maturation is not complete, which leads to a greater likelihood that individuals between the ages of 18 and 20 will be "more reactive and take more risks." *Id.* at 15-16. Finally, beyond a greater propensity for criminal activity, the evidence also included studies showing that the federal minimum age restrictions had "contributed to a very significant decline in youth suicide and unintentional death rates." *Id.* at 17 (internal quotations omitted).

This evidence more than suffices to show the connection between restricting firearm access to persons under 21 and the state interests in public safety and the prevention of violence. In fact, numerous courts across the country have relied on similar evidence in upholding age-based restrictions on the sale and use of, or access to, firearms. *See, e.g.*, *Horsley*, 808 F.3d at 1133 (citing studies and data on "persons

under 21 and violent and gun crimes," as well as scholarly research on development through early adulthood); *McCraw*, 719 F.3d at 348 ("the record in this case emphasize[s] that those under 21 years of age are more likely to commit violent crimes with handguns than other groups"); *BATFE*, 700 F.3d at 206 ("Congress found that persons under 21 tend to be relatively irresponsible and can be prone to violent crime, especially when they have easy access to handguns."). All told, there is no reason for this Court to disturb the district court's analysis.

**CONCLUSION**

For these reasons, this Court should affirm the district court order denying injunctive relief.

RESPECTFULLY SUBMITTED this 26th day of January 2021.

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Sarah A. Hunger
SARAH A. HUNGER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5202
shunger@atg.state.il.us

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KARL A. RACINE
*Attorney General*
*District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 North French Street
Wilmington, DE 19801

CLARE E. CONNORS
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

BRIAN E. FROSH
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

GURBIR S. GREWAL
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
The Capitol
Albany, NY 12224

JOSH SHAPIRO
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square
Harrisburg, PA 17120

MAURA HEALEY
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther
King Jr. Blvd.
St. Paul, MN 55155

HECTOR BALDERAS
*Attorney General*
*State of New Mexico*
Post Office Drawer 1508
Santa Fe, NM 87504

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

THOMAS J. DONOVAN, JR.
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
1125 Washington St. SE
Olympia, WA 98504

MARK R. HERRING
*Attorney General*
*Commonwealth of Virginia*
202 North 9th Street
Richmond, VA 23219

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 20-56174

I am the attorney or self-represented party.

**This brief contains** 4,819 **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [_____].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Sarah A. Hunger    **Date** 1/26/2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 26, 2021, I electronically filed the foregoing Brief of Amici Curiae Illinois, *et al.*, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Sarah A. Hunger</u>
SARAH A. HUNGER
Deputy Solicitor General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-5202
shunger@atg.state.il.us